[648 NYS2d 880]

LILLIAN BROWN, Respondent, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION et al., Appellants.

Second Department, October 15, 1996

### APPEARANCES OF COUNSEL

*Paul A. Crotty, Corporation Counsel* of New York City *(Pamela Seider Dolgow* and *Linda H. Young* of counsel), for appellants.

*Bob M. Finkin,* Forest Hills *(Warren S. Hecht* of counsel), for respondent.

### OPINION OF THE COURT

O'BRIEN, J.

In this appeal, we consider the elements of a cause of action to recover damages for the negligent infliction of emotional distress caused by the fear of contracting Acquired Immune Deficiency Syndrome (hereinafter AIDS), commonly referred to as an "AIDS phobia" claim, and the effect of the plaintiff's refusal to be tested for the AIDS virus on her claim for damages.

### I

On December 8, 1990, the plaintiff, Lillian Brown, was the assistant head nurse in the pediatrics ward of Queens General Hospital (hereinafter the hospital), which was owned and operated by the defendant New York City Health and Hospitals Corporation. During her shift that night and into the next morning, the plaintiff was responsible for the care of nine infants, including "Baby C.". Hospital records indicated that

Baby C. was "HIV positive", that is, she had tested positive for the human immunodeficiency virus (hereinafter HIV) which causes AIDS. The defendants Dr. Dafney Cadur, a second-year resident, and Dr. Karen Tizer, a first-year resident, were responsible for the treatment of Baby C. during the plaintiff's shift.

At about 5:30 A.M. on the morning of December 9, 1990, the plaintiff was changing Baby C.'s diaper when an angiocath stylet (a type of needle) which had been left in the crib penetrated her right thumb to the bone. The stylet was immediately removed and discarded. The plaintiff was treated in the hospital emergency room with drugs for exposure to hepatitis and was advised to take AZT tablets as a preventive measure against AIDS. She was given an HIV-antibody test, which was negative. The next day, a physician's assistant employed by the hospital allegedly advised the plaintiff to assume that she was HIV positive until tests showed otherwise, to take AZT tablets, to use condoms when having intercourse with her husband, and to avoid kissing family members or sharing utensils with them. The plaintiff took the AZT tablets for six months and then discontinued the medication because of its side effects.

In August 1991 the plaintiff commenced this action to recover damages for the negligent infliction of emotional distress caused by her fear of contracting AIDS. She sought damages for the period from 1990, when the incident occurred, to the year 2005, on the theory that, if she was free of the disease by that point, there would be no further risk of developing the disease.

Two years later, in November 1993, the plaintiff was examined by a physician retained by the defendants who determined that she showed no signs of HIV-associated disease. However, the plaintiff refused to undergo a blood test to determine if she was HIV positive. The defendants subsequently moved in June 1994 to compel the plaintiff to submit to such testing, contending that, since it was now almost four years since the incident, an HIV-antibody test would establish whether the plaintiff was at risk of developing AIDS and, consequently, whether her fear of developing the disease was rational. According to the defendants, there was a consensus in the medical community that 95% of all persons who will ultimately test positive for the virus will do so within six months of exposure and that current tests for the presence of the virus were 99% reliable.

The plaintiff's attorney argued in opposition to the defendants' motion that there was no compelling need to order an HIV-antibody test because the defendants would be able to state to the jury that there was no evidence that the plaintiff contracted the virus which causes AIDS. Counsel further noted that the gravamen of the plaintiff's claim for damages was that she had suffered a psychological injury as a result of the defendants' negligence, which was not dependent upon a determination that she had actually contracted the virus. Moreover, counsel suggested that the plaintiff would not be able to cope emotionally with a positive test result, which would be tantamount to a death sentence.

In support of the claim that requiring her to submit to an HIV-antibody test would be emotionally harmful, the plaintiff submitted a report from a psychologist she consulted in the spring of 1993. The psychologist described the changes in the plaintiff's life caused by her fear that she was infected by the virus, such as physical problems, depression, sleep disturbances, fatigue, and less intimacy with her family, and he concluded that she suffered from posttraumatic stress disorder as a result of the incident. He suggested that, by refusing to be tested, the plaintiff was able to believe that she was not infected, and thus was able to continue to function. According to the psychologist, the plaintiff feared that, if she tested positive for HIV, she "would just give up".

In February 1995 the Supreme Court denied the defendants' motion to compel the plaintiff to submit to testing (*Brown v New York City Health & Hosps. Corp.*, 164 Misc 2d 441), concluding that there was no compelling need to require the plaintiff to undergo an HIV-antibody test. Implicit in the plaintiff's claim of "AIDS phobia" was the concession that there was no definitive evidence that she ever contracted the virus. Thus, her cause of action was based on exposure to the virus, not on the actual transmission of the infection, and the damages she sought were for mental distress resulting from her fear of contracting the disease, not for injuries caused by the disease itself. The court indicated that it would have granted the defendants' motion if the plaintiff claimed that she was actually infected with the virus, as she would then have placed her HIV status in issue.

Relying on various publications, the court also discussed in its decision the efficacy of testing for infection by the virus via a blood test which detects the presence of HIV antibodies. Although the plaintiff tested negative for HIV antibodies im-

mediately after the incident, the court noted that HIV antibodies take time to develop after exposure. HIV antibodies usually develop by six months, and the test was considered highly accurate after six months. An accepted scientific means for ruling out infection was to test for the HIV antibodies at 3, 6, 9, and 12 months after exposure. Accordingly, the court concluded that the plaintiff may have contributed to her anxiety by refusing to be tested. However, whether her refusal to be tested violated her responsibility to mitigate damages presented an issue for trial. Finally, the court suggested that, even if the plaintiff tested negative now, she might have a claim for damages because she lived with the fear of AIDS for a period of time.

In May 1995 the defendants moved to renew and reargue the prior motion to compel the plaintiff to submit to an HIV-antibody test, for summary judgment on the ground that there was no rational basis for the plaintiff's claim of AIDS phobia, or for partial summary judgment dismissing all claims of mental distress beyond a six-month period after the date of the incident.

In support of their demand that the plaintiff undergo an HIV-antibody test, the defendants argued that the plaintiff was required to establish a reasonable basis for her fear, and a negative test could result in the dismissal of all of her claims. The defendants requested an order directing the plaintiff to submit to an HIV-antibody test and dismissing her claims pursuant to CPLR 3126 (3) if she failed to comply.

Further, the defendants contended that they were entitled to summary judgment because a cause of action for "AIDS phobia" requires a showing that the plaintiff was actually exposed to the virus, and the evidence established that she was not. There was no evidence that the stylet had ever been in contact with Baby C.'s blood. Although the plaintiff stated at her deposition that a blood sample was drawn from Baby C. during her December 8 to December 9, 1990 shift, she did not see either of the defendant doctors actually draw blood from Baby C., and each of the doctors stated that she had not drawn blood from or performed any invasive procedures on Baby C. during the plaintiff's shift.

The defendants argued that, based on Baby C.'s hospital record, blood was last drawn from her on the morning of December 7, 1990, which would mean that more than 40 hours had elapsed before the plaintiff was stuck by the needle. Assuming that certain notes made by Dr. Cadur in Baby C.'s record might

indicate that blood was drawn on the morning of December 8, 1990, that was still 20 to 24 hours before the plaintiff was stuck with the needle. The defendants submitted an affidavit from Dr. Thomas Nash, an internist specializing in infectious diseases, who stated that HIV cannot live on a surface exposed to air for more than a few hours. Therefore, if the needle was not exposed to the infant's blood for at least 20 hours, to a reasonable degree of medical certainty the plaintiff could not have been exposed to infectious HIV. Moreover, Dr. Tizer stated at her deposition that she assured the plaintiff immediately following the accident that, since no blood work was done on Baby C. during her shift, the needle was probably there for over 20 hours, and the virus could not live that long in the open air. Thus, absent a positive HIV-antibody test, the defendants argued that the plaintiff could not establish that she was actually exposed to the virus.

In the alternative, the defendants argued that the court should grant partial summary judgment and dismiss the plaintiff's claims for mental distress beyond the six-month period when a negative HIV-antibody test could have established that no infection had occurred. Dr. Nash stated that, to a reasonable degree of medical certainty, a person infected with HIV will test positive for the antibody within six months of exposure. Since the court, in its initial decision, noted that a minimal number of infected persons may not test positive for 12 months, the court should, at the very least, dismiss all of the plaintiff's claims for mental distress beyond 12 months after the incident.

The plaintiff responded that it was irrelevant whether the needle actually had infectious HIV blood on it when she was stuck because the determinative issue was whether she reasonably believed that she could contract AIDS from the event. Her fear was reasonable since the needle came from the crib of an HIV-positive infant, and the hospital's employees advised her to take preventative measures against AIDS. If, however, the court concluded that actual exposure to the virus must be demonstrated, the evidence presented a question of fact as to whether the virus remained viable on the needle. The notes in Baby C.'s hospital record were not dispositive, as they did not indicate the time when the blood tests were done, and it was possible that additional blood tests had been performed but were not indicated in the record. The plaintiff stated in an affidavit that Dr. Tizer told her around 3:00 A.M. on December 9, 1990 that she was going to draw blood from Baby C. Although

the plaintiff did not see Dr. Tizer draw blood from Baby C., she saw the doctor holding a vial of blood afterwards. The plaintiff was stuck with the stylet less than three hours later, when the virus may still have been viable.

With respect to the need for an HIV-antibody test, the plaintiff continued to maintain that, since there was proof of exposure to the virus, there was no need for her to show that she was HIV positive in order to recover for mental distress. The time period for which she could recover damages should be left to the jury. Moreover, if the jury concluded that she suffered from posttraumatic stress disorder, a permanent condition, then she would be entitled to future damages even if her fear of developing AIDS became unreasonable.

In an order dated September 21, 1995, the court granted the defendants' motion for reargument and renewal and adhered to its prior determination that the plaintiff need not submit to an HIV-antibody test. The court denied the branch of the defendants' motion which was for summary judgment upon the ground that the plaintiff presented evidence that the source of the allegedly transmitted blood was HIV positive. The defendants' evidence that the needle could not have contained infectious HIV was not dispositive in light of the court's knowledge of a study which indicated that the virus may remain virulent at room temperature for several days. The court rejected the defendants' contention that a positive HIV-antibody test was a prerequisite to maintenance of an action for "AIDS phobia" since such a rule would deny recovery to those who lived in fear of AIDS after clearly being exposed simply because they did not contract the disease. Finally, the court adhered to its prior determination that the issue of future damages, and whether the plaintiff could have mitigated her damages by undergoing an HIV-antibody test, remained an issue for the jury.

## II

Any discussion of the elements of proof of a claim for damages based on the fear of contracting AIDS must be grounded on medical facts about the disease and its transmission. It is beyond dispute that potential exposure to the disease is a cause for anxiety, as it is common knowledge that the virus may lie dormant in the body for years, that it can cause various debilitating illnesses while it runs its course, and that there is no cure. Nevertheless, lack of reliable information about how the disease is transmitted and distrust of assurances from the

scientific community may lead to irrational fears *(see,* Comment, *AfrAIDS: Fear of AIDS as a Cause of Action,* 67 Temple L Rev 769 [1994]; Note, *Can HIV-Negative Plaintiffs Recover Emotional Distress Damages For Their Fear of AIDS?,* 62 Fordham L Rev 225 [1993]). As one court observed, "AIDS, a modern word, less than 20 years old, is accompanied by many myths and misconceptions; it also carries with it in the public's mind such an image of inevitable death as to bring home that terror" *(Marchica v Long Is. R. R. Co.,* 31 F3d 1197, 1199, *cert denied* 513 US 1079). In considering the issues raised by this appeal, we have relied on characteristics of the disease which are generally accepted in the scientific community.

Not every individual who is exposed to HIV-infected fluids or tissues will necessarily become infected with the virus. If an individual is infected, the virus enters the bloodstream where it stimulates the production of antibodies. A person infected with the virus may not develop any symptoms of AIDS for years. The virus gradually weakens the human immune system. When symptoms begin to appear, the person is said to be suffering from AIDS-related complex. Full-blown AIDS is a breakdown of the body's immune system and is always fatal *(see,* Note, *The Fear of Disease as a Compensable Injury: An Analysis of Claims Based on AIDS Phobia,* 67 St. John's L Rev 77, 90, n 100; *Tischler v Dimenna,* 160 Misc 2d 525, 533; *K.A.C. v Benson,* 527 NW2d 553, 559, n 8 [Minn 1995]). Only recently have scientists offered hope that medication may prevent those infected with HIV from developing AIDS *(see, Landmark Studies Change Outlook of AIDS Treatment,* NY Times, July 14, 1996, at 14; *Scientists Display Substantial Gains in AIDS Treatment,* NY Times, July 12, 1996, at 1).

Tests to detect the presence of HIV-antibodies in the system (enzyme immunoassay and the Western blot assay) are considered to be 99% accurate. However, since the antibodies can take 6 to 12 weeks to develop after exposure, tests performed prior to three months are not considered reliable *(see,* Note, *Can HIV-Negative Plaintiffs Recover Emotional Distress Damages For Their Fear of AIDS?, op. cit.,* at 244-245; *K.A.C. v Benson, supra,* 527 NW2d, at 557, n 5; 36 Morbidity and Mortality Weekly Report 509, 510 [Aug. 14, 1987]). The medical consensus is that 95% of HIV carriers will test positive (seropositive) for the virus within six months of exposure, and it is unlikely that an individual who tests HIV negative more than six months after a potential exposure will become infected with the virus as a result of that exposure *(see, Burk v*

*Sage Prods.,* 747 F Supp 285, 288; *Faya v Almaraz,* 329 Md 435, 620 A2d 327, 332; Note, *The Fear of Disease as a Compensable Injury: An Analysis of Claims Based on AIDS Phobia, op. cit.,* at 99, n 177).

HIV may be transmitted only in certain ways. The fluids that can transmit the virus are blood, semen, vaginal fluids, and breast milk, and the virus is only transmitted if fluid from the carrier is introduced into the bloodstream of another individual *(see, Faya v Almaraz, supra,* 329 Md, at 445, 620 A2d, at 332, citing US Dept of Health and Human Servs, Surgeon General's Rep on Acquired Immune Deficiency Syndrome 16 [1987]).

## III

The plaintiff seeks in this action to recover damages for emotional harm caused by the defendants' alleged negligence. Where a duty is owed, the breach of that duty resulting directly in emotional harm is compensable, and physical injury is no longer a necessary component of a cause of action to recover damages for the negligent infliction of emotional distress *(see, Martinez v Long Is. Jewish Hillside Med. Ctr.,* 70 NY2d 697; *Battalla v State of New York,* 10 NY2d 237; *Lancellotti v Howard,* 155 AD2d 588). Thus, the plaintiff need not allege physical injury from the needle in order to maintain her cause of action. However, "[i]t is well settled that the 'circumstances under which recovery may be had for purely emotional harm are extremely limited and, thus, a cause of action seeking such recovery must generally be premised upon a breach of a duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety' " *(Creed v United Hosp.,* 190 AD2d 489, 491, quoting *Lancellotti v Howard, supra,* 155 AD2d, at 589-590).

In the case at bar, it is undisputed that the defendants had a duty to the plaintiff to prevent the transmission of an infectious disease. In order to recover, the plaintiff must demonstrate that the defendants negligently breached that duty and that such breach was the proximate cause of her mental distress *(see, Martinez v Long Is. Jewish Hillside Med. Ctr., supra; Johnson v State of New York,* 37 NY2d 378). In other words, the plaintiff must establish that her fear of developing AIDS was a reasonable result of the defendants' wrongful conduct *(see, e.g., Johnson v West Virginia Univ. Hosps.,* 186 W Va 648, 413 SE2d 889; *see generally,* Note, *Can HIV-Negative Plaintiffs Recover Emotional Distress Damages For Their Fear of AIDS?, op. cit.,* at 237-241; *see also, Winik v Jewish Hosp.,* 31

NY2d 936 [damages for cancerphobia require showing that fear was reasonable]; *Wolff v A-One Oil,* 216 AD2d 291 [fear of developing cancer must have a rational basis]).

In determining the reasonableness of a plaintiff's fear of developing AIDS, courts have considered one or more of three factors: (1) the channel of transmission of the disease, (2) whether HIV was present when the transmission occurred, and (3) the results of HIV-antibody tests. A positive HIV-antibody test, of course, is sufficient prima facie proof that the plaintiff's fear of developing AIDS is reasonable. We are concerned here, however, with a case where the plaintiff has not tested seropositive. We conclude that, in order to maintain a cause of action for damages due to the fear of contracting AIDS, a plaintiff who has not tested seropositive must offer proof of "actual exposure", that is, proof of both a scientifically accepted method of transmission of the virus (in this case a needle puncture) and that the source of the allegedly transmitted blood or fluid was in fact HIV positive (in this case the unfortunate infant). Requiring proof of actual exposure in this manner will, we believe, insure that there is a genuine basis for the plaintiff's fear of developing the disease, that the fear is not based on public misconceptions about the disease, and that such claims are treated consistently. Moreover, we emphasize that "[t]he existence of the channel for infection makes the threat of infection much more of a real possibility to be feared and far more than a speculative worry. Liability in the absence of a channel could provoke a flood of ill-justified litigation. Of course, it is the channel for infection, not actual HIV transmission or infection, which must be proven" *(Vallery v Southern Baptist Hosp.,* 630 So 2d 861, 867 [La App, 4th Cir 1993]).

This approach is consistent with the result reached in several New York cases *(see, e.g., Kaufman v Physical Measurements,* 207 AD2d 595 [postal worker pricked by needle used to draw blood for insurance company; claim barred where individual from whom blood drawn was HIV negative, and plaintiff tested negative for the virus]; *Hare v State of New York,* 173 AD2d 523 [claimant was bitten by an inmate; claim barred where there was no proof that the inmate was infected, and the claimant tested negative for the virus]; *Tischler v Dimenna,* 160 Misc 2d 525, *supra* [plaintiff permitted to maintain an action for emotional distress where she engaged in unprotected sexual intercourse with an individual whom she subsequently learned was HIV positive, even though she tested negative for the virus]; *see also, Ordway v County of Suffolk,* 154 Misc 2d 269; *Doe v Doe,* 136 Misc 2d 1015).

Furthermore, most of the jurisdictions which have considered the necessary elements of a negligence cause of action where damages are sought for the fear of contracting AIDS have similarly concluded that proof of the presence of HIV and a scientifically recognized channel of transmission are required *(see, e.g., Russaw v Martin,* 221 GA App 683, 472 SE2d 508; *Brzoska v Olson,* 668 A2d 1355 [Del Sup Ct 1995]; *K.A.C. v Benson,* 527 NW2d 553, *supra* [Minn]; *De Milio v Schrager,* 285 NJ Super 183, 666 A2d 627; *Kerins v Hartley,* 27 Cal App 4th 1062, 33 Cal Rptr 2d 172; *Doe v Surgicare of Joliet,* 268 Ill App 3d 793, 643 NE2d 1200; *Neal v Neal,* 125 Idaho 627, 873 P2d 881; *Vallery v Southern Baptist Hosp., supra* [La]; *Carroll v Sisters of St. Francis Health Servs.,* 868 SW2d 585 [Tenn]; *Funeral Servs. v Bluefield Community Hosp.,* 186 W Va 424, 413 SE2d 79, *overruled on other grounds Courtney v Courtney,* 190 W Va 126, 437 SE2d 436; *Johnson v West Virginia Univ. Hosps., supra* [W Va]; *Burk v Sage Prods.,* 747 F Supp 285, *supra).*

Some courts have taken a more lenient approach to the issue of whether the plaintiff's fear of contracting AIDS was reasonable, finding proof of a possible channel of transmission sufficient. For example, in *Castro v New York Life Ins. Co.* (153 Misc 2d 1), the plaintiff maintenance worker was pricked by a discarded hypodermic needle in a trash container in the defendant's offices where blood was drawn from prospective life insurance applicants. Although the plaintiff offered no evidence of HIV infection or that the needle was contaminated, the court concluded that a reasonable person exposed to information about AIDS could develop a fear of contracting AIDS under these circumstances. Similarly, in *Marchica v Long Is. R. R. Co.* (31 F3d 1197, *supra),* the proof of a potential channel of transmission of the virus was sufficient. The plaintiff railroad worker was stuck by a blood-filled syringe while cleaning trash in an area frequented by drug users and subsequently tested negative for the virus. The court held that his claim was viable under the liberal provisions of the Federal Employers' Liability Act, even though he could not prove that the needle was contaminated, because he suffered a "physical impact" (31 F3d, *supra,* at 1203) under circumstances which would cause a reasonable person to fear developing AIDS. The court in *Faya v Almaraz* (329 Md 435, 620 A2d 327, *supra)* also took a more lenient approach in that it did not require the plaintiffs to present proof of a channel of transmission. In *Faya,* the plaintiffs were operated on by a surgeon who was HIV positive, but they failed to allege that any incident occurred during surgery by which the virus could have been transmitted.

Because an "AIDS phobia" cause of action is based on a potential future injury, the requirement of proof of actual exposure is necessary in order to insure that such a cause of action remains within the bounds of what is considered reasonably possible. The fear of contracting AIDS depends not only upon the likelihood that the virus was transmitted during a specific incident but also upon the likelihood that infection will develop. As one court noted, the statistical probability of contracting HIV from a single needle stick, assuming the needle was contaminated, is approximately 0.3 to 0.5%; thus, the risk of exposure to HIV where the needle cannot be traced to a previous user is less than that, although it cannot be mathematically calculated *(see, De Milio v Schrager, supra,* 285 NJ Super, at 189, n 3, 666 A2d, at 630). The speculative nature of a claim such as that made by the plaintiffs in *Faya* is underscored by the fact that, as of 1995, there had been no known case of HIV transmission from a physician to a patient, and the theoretical risk of HIV transmission from an infected health care worker to a patient during invasive procedures is minute *(see, K.A.C. v Benson, supra,* 527 NW2d, at 559, n 8).

Having determined that the reasonableness of a plaintiff's fear of contracting AIDS depends upon proof of a channel of transmission and the presence of HIV during the transmission, we address the effect of HIV-antibody test results. As previously noted, tests for the presence of infection in the initial three months following exposure are not reliable, and only if there is no evidence of infection after six months can an individual be assured that exposure did not result in infection by the virus. Thus, where there has been sufficient prima facie proof of actual exposure to the virus, we conclude that, for the first six months following exposure, a plaintiff need not present proof of actual infection with the virus in order to establish that the fear of developing AIDS is reasonable during that time period *(cf., Petri v Bank of N. Y. Co.,* 153 Misc 2d 426; *Wolff v A-One Oil, supra).*

Although the Supreme Court suggested that HIV-antibody tests do not definitively rule out infection until one year after potential exposure, the weight of the authorities cited *infra* suggests that an individual exposed to the virus can be reasonably assured that he or she is free of infection if tests conducted after six months are negative. A plaintiff's initial, reasonable fear of contracting AIDS thus becomes unreasonable if more than six months have passed since exposure, and the plaintiff continues to test negative for HIV antibodies *(see, e.g., De Milio*

*v Schrager, supra* [once plaintiff knew or should reasonably have known he was not infected, any continuing distress must be deemed unreasonable as a matter of law]; *Carroll v Sisters of St. Francis Health Servs., supra* [damages recoverable for emotional distress were confined to time between discovery of exposure and the negative diagnosis or other information that puts to rest the fear of injury]; *Faya v Almaraz,* 329 Md 435, 456, 620 A2d 327, 337, *supra* [damages must be confined to those suffered during the "window of anxiety", the period before the plaintiffs received their negative HIV test results; any lingering injuries would no longer be related to a fear that was reasonable]; *see also, Marchica v Long Is. R. R. Co.,* 31 F3d 1197, *supra;* Note, *The Fear of Disease as a Compensable Injury: An Analysis of Claims Based on AIDS Phobia, op. cit.* [after six months, assuming negative test results, the fear of contracting AIDS would not be reasonable]). Of course, a plaintiff who tests positive for HIV would not be precluded from seeking damages for emotional distress suffered during the period of time that the virus could remain latent before any symptoms of AIDS develop.

## IV

Applying the above criteria to the plaintiff's cause of action, we conclude that the defendants are not entitled to summary judgment. The plaintiff has established triable issues of fact as to whether a breach of duty by the defendants reasonably caused her to fear that she would develop AIDS. The plaintiff presented evidence that HIV was present and that there was a scientifically accepted channel of transmission. The fact that the needle was discarded before it could be tested for the presence of HIV does not bar the plaintiff's claim, as there was other evidence from which a jury could potentially conclude that the needle was contaminated. The hospital records established that Baby C. was HIV positive, and the defendants never disputed that the needle which punctured the plaintiff's thumb was found in Baby C.'s crib. The parties presented conflicting evidence as to whether any blood which remained on the needle could have contained a viable virus when the injury occurred. For purposes of summary judgment, we accept as true the plaintiff's contention that blood was drawn from Baby C. within three hours prior to the incident, and the defendants failed to offer evidence that the virus could not remain viable for that period of time.

While we do not find it appropriate to compel the plaintiff to submit to an HIV-antibody test, the defendants are entitled to

partial summary judgment dismissing the plaintiff's claims for injuries suffered after the initial six-month period following exposure in the event that she does not voluntarily present evidence of a positive HIV-antibody test. The plaintiff's fear of contracting AIDS would be unreasonable as a matter of law after six months, assuming a negative HIV-antibody test result. Thus, if she had undergone a test as requested by the defendants and had received a negative result, the defendants would be entitled to dismissal of her claim for damages after six months because her continued fear after that point in time would be unreasonable. While we understand and sympathize with the plaintiff's reluctance to be tested, we conclude that she may not, by refusing to be tested, preclude the defendants from obtaining such relief. Accordingly, the defendants are entitled to an order limiting the plaintiff's cause of action to recover damages for negligent infliction of emotional distress based upon the fear of contracting Acquired Immune Deficiency Syndrome to those damages suffered during the first six months following her potential exposure to HIV on December 9, 1990, unless the plaintiff presents evidence that she tested positive for HIV.

MILLER, J. P., GOLDSTEIN and McGINITY, JJ., concur.

Ordered that the appeals from the decisions are dismissed, as no appeal lies from a decision (see, Schicchi v Green Constr. Corp., 100 AD2d 509); and it is further,

Ordered that the appeal from the order dated February 24, 1995 is dismissed, as that order was superseded by the order dated September 21, 1995; and it is further,

Ordered that the order dated September 21, 1995 is modified, on the law, by deleting therefrom the provision which denied that branch of the defendants' motion which was for partial summary judgment and substituting therefor a provision granting that branch of the motion to the extent that the plaintiff's cause of action to recover damages for negligent infliction of emotional distress based upon the fear of contracting Acquired Immune Deficiency Syndrome is limited to those damages suffered during the first six months following her potential exposure to HIV on December 9, 1990, unless the plaintiff presents evidence that she tested positive for HIV; as so modified, the order dated September 21, 1995 is affirmed, insofar as appealed from; and it is further,

Ordered that the defendants are awarded one bill of costs.