OPINION OF THE COURT
Yvonne Gonzalez, J.
On September 9, 1988, plaintiff, Jane Doe (hereinafter, Doe), was a full-time lab technician trainee at a hospital (hereinafter, Hospital) where Doe was stuck by a needle attached to a syringe (hereinafter, needle) while she was attempting to recap the needle with a rubber stopper. Doe attempted to recap the needle as the pus specimen in the syringe (hereinafter, specimen) was needed for an anaerobic study. The specimen had been extracted from a patient who was infected with HIV and tuberculosis (hereinafter, TB). Doe thereafter tested HIV positive and contracted TB. Doe claims that John Smith, M.D. (hereinafter, Smith), a surgeon operating on an HIV positive patient infected with TB, was negligent in the extraction, handling and submission of the specimen from the patient and its delivery to the microbiology laboratory where Doe was employed. Specifically, Doe claims Smith was negligent for failing to insure that the specimen left the operating room in an appropriate and safe container with a warning that the specimen was from an HIV positive patient with TB. The specimen left the operating room corked with a rubber stopper and was brought to the microbiology lab, whereupon it was assigned to Doe to “plate out.”
It is undisputed that a nurse in the operating room corked the needle and completed the attached microbiology form. Smith was not a Hospital employee but was a surgeon with admitting privileges.
*188 Doe commenced this action against defendant Smith and the Hospital. Doe’s claims against the Hospital were dismissed upon the grounds of the workers’ compensation defense. The claims of coplaintiffs John Doe and Jackie Doe are derivative. Smith moves pursuant to CPLR 3212 for summary judgment dismissing the complaint.
Smith argues that he owed no legal duty to Doe, a Hospital employee he never knew or met. Secondly, Smith argues that he did not breach a duty to Doe if one existed. Thirdly, Smith argues that his acts or omissions were not a proximate cause of Doe’s injury since Doe stuck herself with the HIV and TB infected needle in the process of recapping it, a practice that was against Hospital policy, and therefore her act was an intervening cause of her injuries precluding liability on the part of Smith.
DID SMITH HAVE A DUTY TO DOE?
With respect to a malpractice claim it is settled that a physician is generally liable only to the patient. (Purdy v Public Adm’r of County of Westchester, 72 NY2d 1 [1988].) Concededly, in this case, there was no doctor-patient relationship between Doe and Smith. Plaintiffs assert that this action is not one for medical malpractice, but rather one based upon “general principles of negligence.” Plaintiffs argue that “one who employs a needle in a medical procedure has the duty to assure that the needle is handled properly and that those who will foreseeably handle the needle are protected from its hazard.”
“ ‘The question of whether a member or group of society owes a duty of care to reasonably avoid injury to another is of course a question of law for the courts’ (Purdy v Public Adm’r, 72 NY2d 1, 8, rearg denied 72 NY2d 953; see also, Eiseman v State of New York, 70 NY2d 175, 187; De Angelis v Lutheran Med. Ctr., 58 NY2d 1053, 1055). Courts resolve legal duty questions by resort to common concepts of morality, logic and consideration of the social consequences of imposing the duty (see, Eiseman v State of New York, supra, at 187).” (Tenuto v Lederle Labs., 90 NY2d 606, 612 [1997] [holding that physician administering polio vaccine to a child had a duty to assess risks to family members of contracting polio from vaccinated infant and advise family of precautions, despite absence of a direct doctor/patient treatment relationship between family members and the physician].)
“In Eiseman, we recognized that, under appropriate circumstances, common morality, logic and social policy could *189 permit a limited extension of the duty of care of a physician beyond the immediate patient under treatment * * * ‘The physician did not, however, undertake a duty to the community at large’.” (Tenuto v Lederle Labs., supra, at 612.) Under standards of common morality, logic and social policy, a duty to minimize the risk of the devastating consequences of a “needle stick” is neither unprecedented nor burdensome. In relatively recent times the medical community has increased its precautions with respect to the handling of medical by-products, such as the needle at issue in this case, for purposes of reducing risks of infection to medical personnel who will subsequently come into contact with those medical by-products. Accordingly, this court holds that there is a duty owed by those in the health or a health-related field, who employ a needle in a medical procedure, to package the needle in a manner that reasonably reduces the risk associated with a needle to those in the health or a health-related field to whom the needle is directed and to those necessary to transport the needle to the intended recipient. It is this duty that was owed to Doe.
Smith rightly observes that in a case cited by plaintiffs, Brown v New York City Health & Hosps. Corp. (225 AD2d 36 [2d Dept 1996] [needle left in HIV infected baby’s crib punctured thumb of nurse]), it was undisputed by the parties that defendant had a duty to prevent transmission of an infectious disease, and therefore Brown is not precedential on the issue of duty. Though Smith cites various cases standing for the doctrine that a physician’s duty is generally to his patient and not the general public, the duty held by this court is narrowly tailored and not a duty to the general public.
MAY SMITH BE HELD LIABLE FOR THE ACTS AND OMISSIONS OF A NURSE?
A surgeon may be held vicariously liable for the negligence of a nurse not in his employ if the act giving rise to the injury is one requiring close supervision and instruction. (Banks v Barkoukis, 231 AD2d 598 [2d Dept 1996] [nurse’s knocking over IV pole while adjusting surgical light does not give rise to surgeon’s liability as nurse’s task did not require close supervision and instruction by surgeon]; Striano v Deepdale Gen. Hosp., 54 AD2d 730 [2d Dept 1976] [physician not liable for nurse’s serving unordered hot water to child, close supervision and instruction not required].) Plaintiffs submit an affirmation dated December 10, 1999 of John Jones, M.D. (hereinafter, Jones), a general surgeon. Jones averred that: “To a reasonable *190 degree of medical certainty, it is my opinion that in 1988, while a surgeon could rely upon the surgical nursing staff to help choose specimen containers and to fill out pathology forms, ultimately it was the surgeon’s responsibility to supervise the nurses and make sure that the function was performed correctly. In 1988, as now, the proper collection, packaging and documenting of surgical specimens were important medical procedures requiring the physician’s supervision and instruction, even if not his actual labor. In 1988, it would not have been acceptable medical practice to package a pus specimen in a needle and syringe capped by a rubber stopper. Proper procedure was to use a sterile test tube as was available in the [Hospital’s] operating rooms in 1988.”
In opposition, in his attorney’s affirmation, defendant attacks Jones’s credibility. However, on a summary judgment motion the “court should draw all reasonable inferences in favor of the nonmoving party and should not pass on issues of credibility.” (Dauman Displays v Masturzo, 168 AD2d 204, 205 [1st Dept 1990].) Credibility is generally an issue for the trier of fact. Moreover, Mary Black (hereinafter, Black), a supervising nurse, was produced by the Hospital for an examination before trial (EBT). Black testified that the determination as to what container a specimen was placed into was a result of a conversation between the surgeon and the scrub assistant.
Jones’s averments create a triable issue of fact as to whether the specimen was negligently packaged and documented in the operating room. Furthermore, Jones’s averments and Black’s testimony create a triable issue of fact as to whether the packaging and documentation of the specimen required the close supervision and instruction of the nurse by Smith. The latter determination by the fact finder will determine whether Smith may be held liable to Doe for the acts or omissions of the nurse.
The copy of the “Operating Room Policies and Procedures” manual (hereinafter, manual) submitted by defendant is a manual from a different hospital and, as such, is inadmissible as irrelevant, notwithstanding the equivocal EBT testimony of Black regarding the similarities of the manuals of both hospitals.
IS THERE A TRIABLE ISSUE OF FACT REGARDING PROXIMATE CAUSE?
“When faced with a motion for summary judgment on proximate cause grounds, a plaintiff need not prove proximate *191 cause by a preponderance of the evidence, which is plaintiffs burden at trial. Instead, in order to withstand summary judgment, a plaintiff need only raise a triable issue of fact regarding whether defendant’s conduct proximately caused plaintiffs injuries.” (Burgos v Aqueduct Realty Corp., 92 NY2d 544, 550 [1998].)
Smith argues that neither his acts nor omissions proximately caused Doe’s injuries, as her intervening act of recapping the needle was “independent of or far removed from the defendant’s conduct.” However, a “plaintiffs conduct may be a superseding force absolving a negligent defendant, but only if the plaintiffs conduct rises above a mere contributing cause of and replaces the defendant’s negligence as the sole cause of the plaintiffs injuries.” (Lucio v Pisanello, 227 AD2d 390, 390-391 [2d Dept 1996].) Under the facts of this case, it cannot be stated as a matter of law that Doe’s conduct replaced any negligence in defendant’s conduct as the sole cause of Doe’s injuries. Moreover, there may be more than one proximate cause of an injury. (Argentina v Emery World Wide Delivery Corp., 93 NY2d 554, 560, n 2 [1999].)
The fact finder could reasonably conclude that the very purpose of packaging and labeling infectious specimens in “goof proof’ containers, as Jones apparently avers was the acceptable medical practice in 1988, was to prevent the transmission of infectious disease to medical workers who were subsequently required to handle the infected specimens and who could become infected by any error on their part in the handling of an unsafely packaged specimen. Thus, it is for the fact finder to determine if any acts or omissions chargeable to Smith were a substantial factor in bringing about the injury to Doe.
In summary, this court holds that there is a duty owed, by those in the health or a health-related field, who employ a needle in a medical procedure, to package the needle in a manner that reasonably reduces the risk associated with a needle to those in the health or a health-related field to whom the needle is directed and to those necessary to transport the needle to the intended recipient. Whether Smith breached this duty is an issue of fact of whether the specimen and needle were negligently packaged in the operating room and whether the packaging and documentation of the specimen required the close supervision and instruction of the nurse by Smith. Whether the acts or omissions for which Smith may be held li *192 able are a substantial factor in causing Doe’s injury is a jury question. For the reasons stated hereinabove, defendant’s motion for summary judgment dismissing the complaint is denied.