OPINION OF THE COURT
Richard E. Sise, J.
This motion presents the question of whether an “AIDS-phobia” cause of action may be maintained when the needle or other instrument of alleged transmission is missing and cannot be tested to confirm whether the HIV virus was actually present.
*513 In July 1997, claimant, a patient at State University Hospital at Stony Brook, had just undergone surgery and was getting into a freshly made hospital bed. As she put her hand between the sheets, the tip of her middle finger was pierced by a hidden hypodermic needle. The nurse who initially arrived on the scene informed claimant that there was no need to keep the needle and apparently discarded it. A short time later claimant was visited by hospital officials who advised her that she should immediately be tested for HIV (human immunodeficiency virus) infection and should continue to be tested on a periodic basis for a year. Claimant has consistently tested negative for HIV since that time. In addition to reimbursement of the medical costs and physical pain and suffering associated with this incident, claimant seeks compensation for the emotional distress she suffered while she waited to find out if she was HIV-positive or had AIDS (Acquired Immune Deficiency Syndrome).
AIDS-phobia actions are based on the common-law tort of negligent infliction of emotional distress (Brown v New York City Health & Hosps. Corp., 225 AD2d 36, 44; see also Ordway v County of Suffolk, 154 Misc 2d 269, 271-272 [discussion of phobia claims]). This cause of action arises from “conduct that unreasonably endangers a plaintiffs physical safety or causes the plaintiff to fear for his or her own safety” (Perry v Valley Cottage Animal Hosp., 261 AD2d 522, 522-523).[1] The factual situations giving rise to such claims must demonstrate “ ‘an especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious’ ” (Johnson v State of New York, 37 NY2d 378, 382).
With respect to AIDS-phobia claims, New York has adopted an “objective” standard, which requires that an injured party establish actual exposure. This can be achieved by proving (1) a means of transmission that is scientifically accepted as capable of conveying the virus, and (2) the presence of blood or other fluid that is HIV-positive (Brown v New York City Health *514 & Hosps. Corp., 225 AD2d 36, supra).[2] This standard is to be distinguished from the “reasonableness” standard adopted in some other jurisdictions, which permits recovery if circumstances of exposure are sufficient to create a “reasonable fear” of infection (see cases cited in Brown, id,., at 46; Fosby v Albany Mem. Hosp., 252 AD2d 606, 607). According to the Second Department, the “actual exposure” standard has been adopted to insure that there is a genuine basis for the alleged fear that AIDS-phobia claims are treated consistently (Brown, 225 AD2d 36, 45, supra).
The instant claim falls within the category of cases where an injured party, who does not ultimately become infected with the AIDS virus, has no difficulty satisfying the first prong of the test (for example, by establishing a needle puncture to be a recognized method by which the AIDS virus can be transmitted) but is unable to prove they were exposed to HIV-positive blood or other fluid because the physical evidence no longer exists and was never tested for the presence of the virus. If the two-part test for actual exposure is applied literally, no one injured under these circumstances would be able to maintain an AIDS-phobia claim, for they could never prove actual exposure. Nevertheless, recovery can be had in some such circumstances.
An action has been permitted to stand where the circumstances surrounding the incident show that there is a high probability that the needle or other instrument was infected with HIV. In Brown (supra), despite a missing and untested needle, the appellate court found that there was “other evidence from which a jury could potentially conclude that the needle was contaminated” (id., at 48), specifically the fact that the needle in question had been left in the crib of an HIV-positive infant and that blood had been withdrawn from the infant no more than three hours earlier before the needle pierced plaintiffs skin.
In most “missing-needle” cases, however, courts have not found a sufficient factual basis for concluding that the instrument was probably a source of HIV. In Bishop v Mount Sinai Med. Ctr. (247 AD2d 329), the First Department ruled regarding an unidentified sharp object in a hospital dumpster, that it was “highly unlikely” that the object had been infectious *515 because the contents of the dumpster had come from the kitchen area, the hospital had stringent procedure for disposing of medical waste, and the plaintiff tested negative for HIV over a year after the incident. In another case, there was “compelling evidence establishing the absence of any real possibility that plaintiff was exposed to HIV’ by a discarded lancet; the evidence in question showed that only 25% of the patients in the hospital were HIV-positive and that none of those patients had been on the plaintiffs floor for several months prior to the accident (Kelly v Our Lady of Mercy Med. Ctr., 279 AD2d 290, 291). The likelihood of contamination was found to be “extremely remote” by the Second Department in Schott v St. Charles Hosp. (250 AD2d 587) where the needle that stuck the plaintiff was smaller than those normally used for blood transfers and it had probably been through the wash, since it was caught in the folds of a recently laundered gown. In some cases, the mere absence of any evidence to suggest that HIV-infected fluids were involved was sufficient to defeat liability (Hare v State of New York, 143 Misc 2d 281 [absence of evidence that an inmate who bit the claimant had AIDS]).
From the cases referenced above, one would conclude that where the instrument of transmission is unavailable and cannot be tested for the presence of HIV, courts should consider evidence relating to the source, location and prior use of the needle or other object to assess the chance that it might have contained HIV-positive material. The two-prong test for determining if an AIDS-phobia case is viable is accurately stated as follows: “In order to maintain an action to recover damages for AIDS-phobia for any period of time, a plaintiff must establish (a) the actual or probable presence of HIV when the alleged transmission occurred, and (b) that there was some injury, impact, or other plausible mode of transmission whereby HIV contamination could with reasonable likelihood enter the plaintiffs bloodstream.” (Montalbano v Tri-Mac Enters., 236 AD2d 374, 375, supra [emphasis added].)
An exception to this standard (or an alternative route to establishing liability) has been contemplated by several courts when considering whether a defendant’s interference with the injured party’s ability to prove the actual presence of HIV can excuse or in some fashion satisfy the requirement to establish actual or probable presence of the virus. The Second Department has rejected the notion that deliberate destruction of the item by defendant gives rise to an inference that it was con *516 taminated, at least where there was evidence that the item was destroyed because hospital staff believed there was nothing to be discovered “rather than by an intention to let the HIV virus die, thereby destroying evidence” (Schott v St. Charles Hosp., 250 AD2d 587, 588, supra). The First Department, however, has suggested that a defendant’s unreasonable delay in gathering and sharing information might amount to an independent “special circumstance” which could support a claim for negligent infliction of mental distress (Kelly v Our Lady of Mercy Med. Ctr., supra). The Third Department has both accepted and applied this view in Fosby v Albany Mem. Hosp. (252 AD2d 606, supra).
In Fosby (supra), the hand of an emergency room patient was punctured by a needle when she reached for a blanket. Ultimately, laboratory analysis determined that the needle was unused and thus contained no HIV-positive hemoglobin, but this information did not become available until 18 months after the plaintiff was injured. While acknowledging that the plaintiff could not prove actual exposure to HIV, the Court held that she could nevertheless pursue her action because she had been exposed to a scientifically accepted method of transmission of HIV (satisfying the first prong of the traditional test) “together with defendant’s unreasonable withholding of information regarding the prior use of the needle and whether the needle had been, or could have been, tested for the presence of blood or HIV antibodies” (id., at 608). This unexplained refusal to provide information regarding the needle might well, the Court stated, constitute a “special circumstance” that would serve to guarantee that the claim is genuine.
This view effectively equates a defendant’s unreasonable concealment of information about the presence of HIV with evidence showing that the virus was actually, or at least probably, present: either qualifies as a “special circumstance” guaranteeing the legitimacy of the claim. On a practical and emotional level, this makes sense, as individuals who have been exposed to something, such as a needle puncture, that is capable of transmitting HIV would surely be equally, if not more, frightened by ominous, unexplained silence on the part of the defendant as they were by knowledge that the virus was, or was likely to be, present on the object.
“Summary judgment is a drastic remedy which should only be granted when it clearly appears that no material and triable issue of fact is presented” (Taft v New York City Tr. Auth., 193 AD2d 503, 505, citing Sillman v Twentieth Century-Fox *517 Film Corp., 3 NY2d 395). It is the procedural equivalent of a trial (Andre v Pomeroy, 35 NY2d 361) and should be granted only when it has been established that there is no triable issue of material fact (Miceli v Purex Corp., 84 AD2d 562, quoting Moskowitz v Garlock, 23 AD 2d 943, 944; see also Phillips v Kantor & Co., 31 NY2d 307, 311). The function of summary judgment is not to decide questions of fact but rather to determine whether questions of fact exist. (Barr v County of Albany, 50 NY2d 247, 253; Double A Limousine Serv. v New York, N. Y. Limousine Serv., 130 AD2d 403, 404.)
To succeed on such a motion, the proponent must make a prima facie showing of entitlement to judgment as a matter of law, “tendering sufficient evidence to eliminate any material issues of fact from the case.” (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853.) Here, in order for either party to make out a prima facie case based on AIDS-phobia, they must establish, at a minimum, all of the known facts about the location, condition and likely source of the needle and/or the specific circumstances under which employees of the defendant elected to dispose of the needle. While the submissions currently before the court contain some information relevant to these inquiries,[3] they do not provide needed information about the hospital floor on which the incident occurred, the types of patients that were routinely treated at that location, the use of the room and the bed prior to claimant’s arrival, identification of the person who decided to dispose of the needle, and information about why that decision was made. Without such full and complete information of the circumstances giving rise to this claim, there exists an unresolved issue of fact as to whether any “special circumstance” exists that would permit a finding of liability in this AIDS-phobia action despite absence of proof that claimant was actually exposed to the virus.
Defendant’s motion is denied.

. In contrast, a cause of action for intentional infliction of emotional distress requires the injured party to prove that the defendant’s conduct “ “has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community’ ” (Murphy v American Home Prods. Corp., 58 NY2d 293, 303, quoting Restatement [Second] of Torts § 46, comment d).

. It has been noted, of course, that “a plaintiff can remedy a deficiency in one of these prongs by demonstrating that although he is at low risk for HIV infection, he has [nevertheless] contracted HIV” (Montalbano v Tri-Mac Enters., 236 AD2d 374, 375).

. These submissions include the hospital incident report, deposition testimony of claimant, and deposition testimony of the nurse who treated claimant immediately after the incident.