[881 NE2d 1187, 852 NYS2d 1]

Helen Ornstein, Appellant, v New York City Health and
Hospitals Corporation et al., Respondents.

Argued January 8, 2008; decided February 7, 2008

## POINTS OF COUNSEL

*Kramer & Dunleavy, LLP,* New York City (*Lenore Kramer* and *Denise M. Dunleavy* of counsel), for appellant. The Appellate Division should not have limited to six months the amount of damages that plaintiff may be awarded. (*Brown v New York City Health & Hosps. Corp.,* 225 AD2d 36; *Johnson v State of New York,* 37 NY2d 378; *Ferrara v Galluchio,* 5 NY2d 16; *Marchica v Long Is. R.R. Co.,* 31 F3d 1197; *Palsgraf v Long Is. R.R. Co.,* 248 NY 339.)

*Michael A. Cardozo, Corporation Counsel,* New York City (*Julie Steiner* and *Barry P. Schwartz* of counsel), for respondents. The Appellate Division majority properly dismissed all of plaintiff's claims for emotional distress damages following the first six months of exposure to the AIDS virus. In accordance with all the intermediate appellate court decisions on this issue, the unchallenged scientific and statistical evidence establishes that, for an individual who has not tested positive for HIV, that individual's fear of contracting AIDS, as well as all other emotional injuries stemming from that initial fear, becomes unreasonable as a matter of law after the first six months following exposure. (*Brown v New York City Health & Hosps. Corp.,* 225 AD2d 36; *O'Neill v O'Neill,* 264 AD2d 766, 94 NY2d 858; *Bishop v Mount Sinai Med. Ctr.,* 247 AD2d 329; *Taormino v State of New York,* 286 AD2d 490; *Milks v McIver,* 264 NY 267; *Sims v Comprehensive Community Dev. Corp.,* 40 AD3d 256; *Marchica v Long Is. R.R. Co.,* 31 F3d 1197; *Damanti v Jamaica Community Adolescent Program,* 12 AD3d 341; *Kelly v Our Lady of Mercy Med. Ctr.,* 279 AD2d 290, 96 NY2d 719; *McLarney v Community Health Plan,* 250 AD2d 310, 93 NY2d 848.)

### OPINION OF THE COURT

GRAFFEO, J.

While working as a nurse at a hospital, plaintiff was exposed to the human immunodeficiency virus (HIV) when she was stuck by a blood-filled hypodermic needle that had been left in the bed of a patient with acquired immune deficiency syndrome (AIDS). HIV-antibody tests ultimately established that she had not contracted the virus. The primary issue in this case is the extent of damages plaintiff may recover on her negligent infliction of emotional distress claim. Defendants argue that plaintiff was properly restricted to presenting the jury with proof that she experienced mental anguish for a period of six months following the needle-stick incident. We disagree and conclude that, because plaintiff produced prima facie proof that she suffered from post-traumatic stress disorder and other emotional distress for more than six months after exposure, she should have been allowed to seek recovery for those injuries at trial.

The facts surrounding plaintiff Helen Ornstein's exposure to HIV are not in dispute. On September 1, 2000, while working as a nurse on a per diem basis at Bellevue Hospital in Manhattan, plaintiff and a nurse's aide began bathing a critically-ill patient suffering from AIDS. As she was turning the patient, plaintiff was stuck in the thumb by a hypodermic needle that had been

left in the patient's bed by an intern. Because the needle contained blood, plaintiff was immediately treated with antiviral medications for potential HIV exposure. She remained on these medications for two months, suffering side effects that continued for several months thereafter including nausea and neuropathy in her hands and feet.

Plaintiff also promptly commenced a regimen of periodic HIV testing, a practice that involves examination of the blood to determine whether HIV antibodies are present. Such antibodies are not evident on the date of exposure but can develop over time. The presence of HIV antibodies signals that a person has contracted the HIV virus, which may lead to the development of AIDS or other HIV-related illness. Plaintiff here was tested every three months for a period of two years following her exposure but consistently tested negative for infection with HIV.

In May 2001, plaintiff commenced this action against the intern and the New York City Health and Hospitals Corporation, as operator of the hospital, alleging negligent infliction of emotional distress. After defendants answered the complaint and the parties conducted discovery, defendants moved to dismiss that part of plaintiff's claim that sought damages for emotional distress plaintiff suffered more than six months after the needle-stick incident. Relying on the Appellate Division decision in *Brown v New York City Health & Hosps. Corp.* (225 AD2d 36 [2d Dept 1996]), defendants contended that plaintiff could not recover emotional distress damages beyond the six-month mark because a person exposed to HIV who has tested negative at that juncture is unlikely to become infected and it is therefore unreasonable as a matter of law for that person either to continue to fear infection or claim emotional distress due to the exposure incident.

In opposition to defendants' motion, plaintiff submitted evidence that she had continued to experience mental anguish relating to the incident long after the initial six-month period had passed and, in fact, expected to suffer permanently from post-traumatic stress disorder. At her deposition, plaintiff testified that she had not been advised by a physician that her fear of contracting HIV should have been allayed after six months. She stated that her anxiety over whether she had been infected with the virus continued until she tested negative in June 2002, about a year and a half after the incident. Even after her fear about testing positive dissipated, plaintiff asserted that she continued to suffer emotional distress in the form of post-

traumatic stress disorder, a condition that caused her to experience sleep disturbances and "flash backs" relating to the incident. She developed such a significant fear of future needle-stick incidents that she changed the nature of her work from patient care to office work and, later, to teaching, ultimately accepting a position that did not require any patient contact. Plaintiff explained that she had undergone psychiatric therapy and taken antidepressant medications to alleviate her emotional injuries but, despite these efforts, her symptoms persisted. In addition to her deposition testimony, plaintiff provided the report of a psychiatrist who opined that, as a result of the needle-stick incident, plaintiff suffered from chronic post-traumatic stress disorder warranting additional treatment for the foreseeable future.

In reply, defendants did not dispute that plaintiff could produce prima facie evidence of persistent emotional distress beyond six months of her exposure to HIV. Rather, they urged that any plaintiff who tested negative for HIV infection six months after exposure should be precluded, as a matter of law, from recovering damages for subsequent emotional distress because, at the conclusion of the six-month "window of anxiety" period, continuing emotional distress becomes unreasonable and, hence, uncompensable.

Supreme Court denied defendants' motion, finding that plaintiff's submissions, which were supported by objective medical evidence, established a bona fide claim of continuing emotional distress sufficient for submission to a jury. On defendants' interlocutory appeal, a three-justice majority of the Appellate Division reversed and granted defendants' motion to restrict damages, while the two dissenters would have affirmed Supreme Court's holding.

The case then proceeded to trial, with plaintiff being foreclosed from presenting evidence that she suffered damages beyond the six-month period immediately following the needle-stick incident. The jury found defendants liable and awarded plaintiff a judgment of $333,000 for past pain and suffering and $15,000 for past lost wages. Plaintiff now appeals to this Court as of right from the judgment of Supreme Court, bringing up for review the prior, nonfinal Appellate Division order restricting damages. Because we agree with plaintiff that damages were improperly limited, we reverse both the judgment and Appellate Division order, and remit this matter to Supreme Court for a new trial on damages.

It is well-settled that a person "to whom a duty of care is owed . . . may recover for harm sustained solely as a result of an initial, negligently-caused psychological trauma, but with ensuing psychic harm with residual physical manifestations" (*Johnson v State of New York*, 37 NY2d 378, 381 [1975] [citations omitted]). A breach of the duty of care "resulting directly in emotional harm is compensable even though no physical injury occurred" (*Kennedy v McKesson Co.*, 58 NY2d 500, 504 [1983]) when the mental injury is "a direct, rather than a consequential, result of the breach" (*id.* at 506) and when the claim possesses "some guarantee of genuineness" (*Ferrara v Galluchio*, 5 NY2d 16, 21 [1958]). Applying these principles to negligent infliction of emotional distress claims arising from exposure to HIV, New York courts have required plaintiffs who have not tested HIV positive to come forward with proof that, due to the negligence of another party, they were exposed to HIV through "a scientifically accepted method of transmission of the virus . . . and that the source of the allegedly transmitted blood or fluid was in fact HIV positive" (*Bishop v Mount Sinai Med. Ctr.*, 247 AD2d 329, 331 [1st Dept 1998] [internal quotation marks omitted]; *see O'Neill v O'Neill*, 264 AD2d 766 [2d Dept 1999], *lv dismissed* 94 NY2d 858 [1999]; *McLarney v Community Health Plan*, 250 AD2d 310 [3d Dept 1998], *lv dismissed* 93 NY2d 848 [1999]).[1]

There is no question in this case that defendants owed plaintiff a duty of care and that she came forward with proof that fulfilled the "actual exposure" requirement, thereby satisfying the indicia of genuineness requirement. Thus, the parties agree that plaintiff's negligent infliction of emotional distress claim warranted a jury trial. The disagreement centers on the extent of damages that plaintiff was entitled to request at trial.

In concluding that plaintiff's damages should be restricted to those suffered during the six months following the HIV exposure incident, the Appellate Division largely relied on *Brown v New York City Health & Hosps. Corp.* (225 AD2d 36 [1996]). Like this case, the plaintiff in *Brown* was a nurse who was stuck by a needle used in treating an HIV-infected patient. She then com-

---

**1.** This is consistent with the approach taken by the majority of other jurisdictions that have considered the issue (*see e.g. John & Jane Roes, 1-100 v FHP, Inc.*, 91 Haw 470, 985 P2d 661 [1999]; *Majca v Beekil*, 183 Ill 2d 407, 701 NE2d 1084 [1998]; *Carroll v Sisters of St. Francis Health Servs., Inc.*, 868 SW2d 585, 590 [Tenn 1993]).

menced a negligent infliction of emotional distress lawsuit seeking damages for the period from 1990 (when the needle-stick incident occurred) until the year 2005 on the theory that, if she was free of the disease after 15 years, her risk of infection would be extinguished. After an initial HIV test taken on the day of the incident, which would not have shown a positive result even if she had contracted the virus that day, plaintiff refused to take additional tests to definitely establish her HIV status. The *Brown* defendants moved to compel plaintiff to undergo HIV testing, arguing that her refusal to do so hampered their defense since it opened the door to jury speculation that she had contracted the virus. Alternatively, they sought partial summary judgment dismissing all claims of mental distress beyond six months on the rationale that statistical evidence demonstrated that an HIV test administered six months after the date of exposure would have conclusively established plaintiff's HIV status and likely allayed any fear that the HIV exposure incident caused her to contract the disease. Plaintiff responded with proof from her psychologist that requiring her to take an HIV test would be emotionally harmful.

The motion court refused to order plaintiff to take an HIV test and denied the defendants' application to restrict damages but, on appeal, the Appellate Division granted the latter relief. The *Brown* court first noted that "the statistical probability of contracting HIV from a single needle stick, assuming the needle was contaminated, is approximately 0.3 to 0.5%" (225 AD2d at 47), meaning that only 3 to 5 of every 1,000 people stuck with an HIV-contaminated needle will be infected with HIV. It recognized that HIV tests are not conclusive in the first three months following exposure because of the time necessary for antibodies that signal the presence of HIV to develop in the bloodstream, thereby triggering a positive test result. The court observed, however, that HIV tests are 99% accurate and that 95% of HIV-positive individuals will test positive within six months after exposure. It therefore concluded "that an individual exposed to the virus can be reasonably assured that he or she is free of infection if tests conducted after six months are negative" (*id.*). In essence, this evidence supported defendants' argument that it would be unfair to allow plaintiff to seek damages for 15 years of emotional distress when plaintiff refused to take reasonable steps available to her to determine her HIV status—steps that would have likely mitigated that distress given the low risk of contracting HIV from a needle-stick

incident. Based on the statistics, the court determined that "plaintiff's fear of contracting AIDS would be unreasonable as a matter of law after six months, assuming a negative HIV-antibody test result" (*id.* at 49) and that it would be inequitable to allow her to avoid this result by refusing to be tested.

The restriction of damages in *Brown* can be viewed as a compromise fashioned to address the dilemma created by plaintiff's decision not to be tested. On the one hand, given the possibility that a test could have yielded positive results, thereby causing plaintiff additional emotional distress and leading to other consequences, the court understandably did not wish to compel plaintiff to undergo testing. On the other, plaintiff's unwillingness to be tested left defendants in the untenable position of having to defend an exposure claim while plaintiff's HIV status was unknown, creating a strong likelihood that the jury would speculate that plaintiff had, in fact, contracted the virus, leading to an excessive damages award. The court struck the balance it deemed appropriate.[2]

In the wake of *Brown*, some New York courts, including the Appellate Division in this case, have applied its holding to cases in which plaintiffs have undergone HIV testing, issuing orders precluding recovery of injuries suffered more than six months after HIV exposure (*see e.g. Sims v Comprehensive Community Dev. Corp.*, 40 AD3d 256 [1st Dept 2007]; *Taormino v State of New York*, 286 AD2d 490 [2d Dept 2001]). Where a plaintiff pursuing a negligent infliction of emotional distress claim arising from HIV exposure has been tested at regular intervals with negative results, the *Brown* restriction of damages approach is inapposite for several reasons.

First, as the facts here demonstrate, a rule that restricts recovery of emotional distress damages for all plaintiffs as a matter of law based only on scientific and medical statistics—no matter how reliable those statistics may be—makes little sense if the probabilities identified by researchers were not known to the plaintiff during the relevant time frame. Plaintiff claimed that none of her physicians advised her that her risk of testing positive in the future would dramatically decrease, if not virtu-

---

2. Because the *Brown* decision is not before this Court for review, we express no view on the propriety of the Appellate Division compromise. We note that restriction of damages may not be the only approach available to address the dilemma presented by a plaintiff's unwillingness to undergo HIV-antibody testing; depending on the facts of the case, a stipulation or jury charge might be employed to prevent prejudice to the defense.

ally cease, once she tested negative at the six-month juncture and that she was unaware of this from her own medical training. Nor is there any allegation in this case that plaintiff avoided acquainting herself with the pertinent facts. Rather, she obtained medical care on a timely and consistent basis yet she testified that her fear of contracting HIV from the needle-stick incident continued until she tested negative in June 2002, about a year and a half after exposure. Thus, in contrast to *Brown* where the plaintiff alleged that her fear of infection would not be alleviated until 15 years had elapsed, this is not a case where a plaintiff is seeking AIDS phobia damages for a protracted period of time. In assessing credibility, the jury is, of course, free to reject plaintiff's testimony but, for purposes of defendants' motion to restrict damages, her assertions were sufficient to raise a triable issue of fact concerning the duration of her fear of infection.

Second, limitation of all categories of damages based on the statistical probability of testing positive for HIV within a particular time frame does not account for the fact that a plaintiff exposed to HIV may suffer injuries that are distinct from the fear of contracting the virus. In this case, in response to defendants' motion to dismiss, plaintiff offered medical proof that she continued to suffer from post-traumatic stress disorder, a recognized psychiatric condition requiring treatment with medication and therapy, even after her concern that she had contracted the virus was alleviated. Plaintiff testified that she lost income because she was never able to return to per diem hospital work after the incident due to her fear of similar future exposure incidents. In addition, while her HIV status was uncertain, she was unable to engage in direct patient care but had to confine her duties to office work. She stated that, after it was determined that she had not contracted the virus, she continued to suffer from post-traumatic stress disorder and that this condition was a contributing factor in her decision to permanently change the nature of her employment from direct patient care to teaching. If it credited this evidence, a rational jury could find that plaintiff's psychiatric condition and resulting loss of income were directly related to the exposure incident, warranting monetary recovery.

Defendants contend that damages should be curtailed in negligent infliction of emotional distress cases stemming from HIV exposure due to the "still-prevalent ignorance and subjective, irrational fears surrounding" AIDS, arguing that public

policy considerations support "taking emotions out of the equation of AIDS cases at a fixed point in time so as to ensure fairness and consistency" (respondents' brief at 30). Assuming defendants' assertions relating to the current state of public awareness about AIDS to be true, we are nonetheless unpersuaded that emotions can appropriately be removed from the damages equation in a negligent infliction of emotional distress claim. Nor have defendants shown that a bright-line restriction of damages rule such as the six-month demarcation—an approach that appears to be unprecedented in our common-law tort jurisprudence—is necessary to avoid unreasonably high verdicts in this genre of tort cases; no such pattern of inappropriate judgments has been identified. If an occasional excessive, idiosyncratic award does issue, it can be corrected by the Appellate Division through exercise of its power to set aside judgments that deviate materially from what would be reasonable compensation (see CPLR 5501 [c]).

We stress that, just as in any personal injury case, trial judges can assess the viability of damages claims in HIV exposure cases before submission to the jury by evaluating whether such claims are supported by legally sufficient evidence. Defendants here do not dispute that, in opposition to their motion papers, plaintiff presented prima facie evidence of continuing post-traumatic stress disorder. But where supporting medical evidence is lacking, a trial court might well preclude a plaintiff from pursuing recovery for that component of psychic distress.

It also bears noting that defendants remain free to challenge AIDS phobia and other emotional distress evidence by presenting medical and scientific proof concerning the probability of a plaintiff contracting HIV after having tested negative at various points in time to ensure that the jury understands the risk a plaintiff actually faced and the future risk of a plaintiff testing positive. Likewise, defendants may question a plaintiff and any treating physicians to ascertain what information was available to the plaintiff concerning testing time frames and probabilities. A rational jury might conclude, based on evidence of this nature, that a particular plaintiff's fear of contracting HIV ceased to be reasonable at a certain point in time and, after that point, any residual anxiety was not sufficiently causally related to the underlying exposure incident to warrant recovery. Similarly, since a plaintiff "is not permitted to recover for damages that could have been avoided by using means which a reasonably prudent person would have used to . . . alleviate the pain" (PJI

2:325), a defendant who believes that a plaintiff has unreasonably failed to take steps to relieve emotional distress arising from an exposure incident can raise a failure to mitigate damages defense.

In this case, however, it is undisputed that plaintiff came forward with evidence that her emotional distress and other direct damages did not cease six months after the exposure incident. Because this proof was sufficient to withstand defendants' motion to restrict damages, the Appellate Division erred in directing that plaintiff's damages be limited to that time period at trial.

Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be reversed, with costs, defendants' motion to dismiss any claim for damages allegedly sustained by plaintiff more than six months after the incident sued upon should be denied, and the case should be remitted to Supreme Court for a new trial on damages.

Chief Judge KAYE and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Judgment appealed from and order of the Appellate Division brought up for review reversed, etc.