MICHAEL A. SITA et al., Respondents, v LONG ISLAND JEWISH-HILLSIDE MEDICAL CENTER, Appellant, et al., Defendants.
[803 NYS2d 112]—

In an action, inter alia, to recover damages for medical malpractice, the defendant Long Island Jewish-Hillside Medical Center appeals, as limited by its brief, from so much of an order of the Supreme Court, Nassau County (Covello, J.), dated March 26, 2004, as, upon reargument, adhered to a prior determination of the same court (Burke, J.), in an order dated April 8, 2003, denying those branches of its motion which were for summary judgment dismissing the fourth, fifth, sixth, ninth, and eleventh causes of action insofar as asserted against it.

Ordered that the order is reversed insofar as appealed from, on the law, with costs, upon reargument, so much of the order dated April 8, 2003, as denied those branches of the motion which were for summary judgment dismissing the fourth, fifth, sixth, ninth, and eleventh causes of action insofar as asserted against the appellant are granted, those causes of action are dismissed, and the action against the remaining defendants is severed.

Summary judgment should have been granted dismissing the cause of action alleging medical malpractice insofar as asserted against the appellant, the Long Island Jewish-Hillside Medical Center (hereinafter LIJ). Since the injured plaintiff was treated by his private physician, who was not an employee of LIJ, it cannot be held vicariously liable for his alleged malpractice (*see Hill v St. Clare's Hosp.*, 67 NY2d 72, 79 [1986]; *Orgovan v Bloom*, 7 AD3d 770 [2004]). Similarly, it was the duty of the injured plaintiff's private physician, and not LIJ, to obtain the plaintiff's informed consent (*see* Public Health Law § 2805-d; *Fiorentino v Wenger*, 19 NY2d 407, 417 [1967]). There is no indication that LIJ knew or should have known that the injured plaintiff's physician was acting without informed consent, or that LIJ had reason to suspect malpractice (*see Cirella v Central Gen. Hosp.*, 217 AD2d 680 [1995]; *Culkin v Nassau Hosp. Assn.*, 143 AD2d 973 [1988]). Indeed, the pedicle screw system used to treat the injured plaintiff's back condition was considered the standard of care in the medical community (*see Sita v Danek*

*Med., Inc.*, 43 F Supp 2d 245, 255-256 [1999]). Although marketing and promotion of the pedicle screw system was not approved by the Food and Drug Administration (hereinafter the FDA) for treating the injured plaintiff's condition, this does not prevent a physician from using the system in an "off-label" manner (*see* 21 USC § 396; *Buckman Co. v Plaintiffs' Legal Comm.*, 531 US 341, 350 [2001]; *Sita v Danek Med., Inc., supra* at 262). Furthermore, because the injured plaintiff was not participating in a clinical investigation, FDA regulations did not require LIJ to obtain his informed consent or to disclose the regulatory status of the pedicle screw system (*see* 21 USC § 360j [g]; 21 CFR 50.25). Because as a matter of law LIJ established that it had no duty to obtain the injured plaintiff's informed consent, and no triable issue of fact was raised by the plaintiffs, upon reargument, summary judgment dismissing that cause of action should have been granted (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]).

As to the cause of action alleging negligent hiring and supervision (*see Bleiler v Bodnar*, 65 NY2d 65, 73 [1985]), in opposition to LIJ's motion, the plaintiffs failed to identify any negligently hired or supervised employee of LIJ. Accordingly, summary judgment dismissing that cause of action was also warranted (*see Zuckerman v City of New York*, 49 NY2d 557 [1980]; *see also Polanco v City of New York*, 244 AD2d 322 [1997]).

In light of this determination, the punitive damages claim and the plaintiff wife's derivative claim are no longer viable, and the plaintiffs' remaining contention need not be reached. Cozier, J.P., Krausman, Goldstein and Lunn, JJ., concur.