[864 NYS2d 46]

JOAN SALANDY, Respondent, v ELI BRYK, M.D., et al., Defendants, and KINGSBROOK JEWISH MEDICAL CENTER, Appellant.

Second Department, September 9, 2008

## APPEARANCES OF COUNSEL

*Martin Clearwater & Bell, LLP,* New York City (*Nancy A. Breslow, Peter T. Crean* and *Charles S. Schechter* of counsel), for appellant.

*Roura & Melamed,* New York City (*Alexander J. Wulwick* of counsel), for respondent.

## OPINION OF THE COURT

FISHER, J.P.

The principal issue presented on this appeal concerns the circumstances under which a hospital may be liable for failing to

inform a private physician who is about to perform surgery at its facility that his patient has signed a refusal to consent to the transfusion of blood or blood products.

On December 5, 2003, the plaintiff, Joan Salandy, was at the facility of the defendant Kingsbrook Jewish Medical Center (hereinafter Kingsbrook) to undergo knee replacement surgery. The operation was to be performed by her private physician, Dr. Eli Bryk. Sometime before the surgery was to begin, the plaintiff signed a "Request and Authorization for Operation and/or Procedure" (hereinafter the consent form). The consent form read in pertinent part:

> "The undersigned physician has fully explained to me the purpose of the operation/procedure and the nature and expected benefits and complications (from known and unknown causes), attendant discomforts and risks that may arise, as well as possible alternatives to the proposed treatment, and the risks and consequences of no treatment. I have been given an opportunity to ask questions, and all my questions have been answered to my satisfaction. . . .

> *"I also consent to the administration of blood and/or component therapy by transfusion as may be considered necessary.* I recognize that there are always risks to life and health associated with blood and/or component transfusions and such risks, alternatives, including the alternative of no blood transfusions, have been fully explained to me"* (emphasis added).

Just above the plaintiff's signature was a paragraph reciting that she had crossed out any paragraphs not pertaining to her: "I confirm that I have read and fully understand the reverse side and found it completed prior to signing. I have crossed out any paragraphs above which do not pertain to me." Nothing on the form had been crossed out. The name of the physician performing the surgery, "Bryk," and the procedure to be performed, "Left total knee arthroplasty," were handwritten on the front side of the consent form, preceding the words "undersigned physician." The signature of a first-year orthopedic resident at the hospital, Dr. Gene Choi, appears on the consent form, certifying that the plaintiff had signed the form in his presence.

The plaintiff, a Jehovah's Witness, also signed a form entitled "Refusal to Consent to Blood/Blood Component Transfusion"

(hereinafter the refusal form). The refusal form contained, inter alia, the following statement:

> "Although my doctor has fully explained to me the nature and purposes of the blood/blood component transfusion, the possible alternatives thereto and the risks and consequences of not proceeding, and I fully understand that such transfusion may be deemed necessary in the opinion of the attending physician or his assistants to preserve life or promote recovery, I nonetheless refuse to consent to the transfusion."

The refusal form also bore the signature of Dr. Choi, who signed as a witness.

The surgery was subsequently performed without complication. The surgeon, Dr. Bryk, issued "standing orders" which included a direction that, after the surgery, the plaintiff be given an autotransfusion—a transfusion of her own blood lost and collected during the surgery. Pursuant to Dr. Bryk's standing orders, Dr. Saul Magitsky, a resident who assisted him in the surgery, wrote an order for an autotransfusion and, following the operation, hospital staff performed that procedure.

After the plaintiff learned of the autotransfusion, she commenced this action against Dr. Bryk, Dr. Magitsky, and Kingsbrook. The action was predicated on medical malpractice and lack of informed consent. The plaintiff sought, inter alia, damages for emotional distress.

At his deposition, Dr. Choi testified that, although the plaintiff had signed both the consent form and the refusal form in his presence, and although he had discussed both forms with her, he did not inform Dr. Bryk, or anyone else, of the inconsistency between the two forms with respect to transfusions. Instead, he simply placed both forms into the preoperative file. He testified further that he was unaware of any hospital procedures in place at the time of the plaintiff's operation to alert recovery room nurses as to whether a patient consented to, or refused, blood transfusions.

In contrast, Dr. Bryk testified that the plaintiff signed the consent form "right before the operation in the pre-operative holding area," and not in the presence of Dr. Choi. Dr. Bryk then signed the consent form certifying that the

> "nature, purpose, benefits, risks of, and alternatives to the proposed procedure/operation and an op-

portunity to answer questions was offered and all such questions asked were fully answered [and that he believed] that the patient/relative/guardian fully underst[ood] what ha[d] been explained and answered, and ha[d] consented to undergo the proposed procedure/operation."

At his deposition, Dr. Bryk was asked whether, when he took the consent just before the surgery, he "would . . . have mentioned anything to the patient" about the possibility of a blood transfusion or autotransfusion. Relying on his custom and practice, he answered: "No, I would have mentioned to the patient to review the consent, which reviewed the risks and benefits which we discussed in the office. The patient would sign and then I would sign it myself." Dr. Bryk testified that, had Dr. Choi told him that the plaintiff signed a refusal form, he would not have ordered the transfusion. He also testified that Dr. Choi's failure to inform him or the nursing staff of the refusal was a departure from good and accepted medical practice.

Following the completion of discovery, the plaintiff moved for summary judgment against Kingsbrook on the issue of liability, and the defendants cross-moved for summary judgment dismissing the complaint. The plaintiff did not submit an expert affidavit in support of her motion. Dr. Bryk, however, submitted an affirmation by Dr. Irving Liebman, who opined that Dr. Choi had "departed from good and accepted medical practice when he failed to advise either the nursing staff, Dr. Magitsky or Dr. Bryk that plaintiff had executed a written refusal of blood products." Dr. Liebman averred further:

> "It is my opinion that after obtaining an informed consent, Dr. Choi had a duty to properly communicate that the plaintiff had signed a written refusal of blood products to the attending surgeon, surgical resident and/or nursing staff. It is my opinion that Dr. Choi departed from good and accepted medical practice when he placed the written consent and refusal of blood products into the plaintiff's pre-operative packet and failed to follow-up with the attending surgeon, surgical resident or nursing staff."

On the other hand, Dr. Liebman opined that, if, as Dr. Bryk testified, "the plaintiff voluntarily and knowingly executed the consent form immediately prior to the surgery which specifi-

cally authorized Dr. Bryk to order a blood transfusion . . . the care and treatment rendered by Dr. Bryk conformed to good and accepted medical practice."

For its part, Kingsbrook submitted an affirmation by Dr. Herbert Sherry, who concluded that "it was not a departure from the standard of care for Dr. Choi to follow protocol and place the [refusal form] in the preoperative package which traveled with the plaintiff throughout her operative course rather than informing Dr. Bryk of plaintiff's refusal personally." After noting that the plaintiff signed the refusal form and that it "accompanied plaintiff throughout her surgical course," Dr. Sherry asserted that "the standard of care requires that the attending physician review the entire chart of a patient prior to the performance of surgery upon said patient."

In an order dated August 17, 2006, the Supreme Court, inter alia, granted the plaintiff's motion for summary judgment on the issue of liability against Kingsbrook and denied Kingsbrook's cross motion for summary judgment dismissing the complaint insofar as asserted against it. The court also granted the cross motions of Drs. Bryk and Magitsky for summary judgment dismissing the complaint insofar as asserted against them. Only Kingsbrook appeals.

To prevail on a claim for medical malpractice, a plaintiff must prove a "deviation or departure from accepted practice and . . . that such departure was a proximate cause of injury or damage" (*Thompson v Orner*, 36 AD3d 791, 791-792 [2007]; *see Perro v Schappert*, 47 AD3d 694 [2008]; *Anderson v Lamaute*, 306 AD2d 232, 233 [2003]). In terms of a medical malpractice claim predicated on lack of informed consent, where a private physician attends his or her patient at the facilities of a hospital, it is the duty of the physician, not the hospital, to obtain the patient's informed consent (*see Cirella v Central Gen. Hosp.*, 217 AD2d 680, 681 [1995]; *cf.* Public Health Law § 2805-d [1]). Moreover, the mere recording or witnessing of a consent by a hospital employee is a ministerial task that does not subject the hospital to liability (*see Cirella v Central Gen. Hosp.*, 217 AD2d at 681; *Brandon v Karp*, 112 AD2d 490, 492-493 [1985]). However, the hospital may be liable where it knew or should have known that the private physician using its facilities was acting or would act without the patient's informed consent (*see Fiorentino v Wenger*, 19 NY2d 407, 414-415 [1967]; *Sita v Long Is. Jewish-Hillside Med. Ctr.*, 22 AD3d 743 [2005]; *Cirella v Central Gen. Hosp.*, 217 AD2d at 681; *cf. Hill v St. Clare's Hosp.*, 67 NY2d 72, 79 [1986]).

■ This is an appeal from an order resolving, as a matter of law, the issue of Kingsbrook's liability to the plaintiff. The principal issue before us, therefore, is whether, on the record presented, there is a triable issue of fact as to whether Kingsbrook knew or should have known that, in ordering the auto-transfusion, Dr. Bryk was acting without the plaintiff's consent. Contrary to the conclusion of the Supreme Court, we find that the record presents triable issues of fact.

Dr. Choi testified that he "discussed" the consent form with the plaintiff. Although the substance of the discussion was not developed in the record, even the hospital's expert, Dr. Sherry, described Dr. Choi's actions as going well beyond the mere recording or witnessing of a consent. As Dr. Sherry put it, Dr. Choi "explained to plaintiff the risks and benefits of the surgical procedure which plaintiff was undergoing, and consequently had plaintiff execute a consent to the total left knee arthroplasty." In addition, as to the refusal form, Dr. Choi testified that he discussed transfusions with the plaintiff and that she told him that, as a Jehovah's Witness, she would not consent to transfusions for religious reasons. Dr. Choi did not testify, however, that after having discussed the two forms with the plaintiff, and having witnessed her execution of both, he discussed with her the inconsistent provisions regarding her willingness to receive transfusions. Nor did he make any attempt to alert Dr. Bryk, Dr. Magitsky, or the recovery room nurses to the plaintiff's conflicting directions. Instead, he simply placed both forms into the preoperative packet.

According to Dr. Liebman, "after obtaining an informed consent, Dr. Choi had a duty to properly communicate that the plaintiff had signed a written refusal of blood products to the attending surgeon, surgical resident and/or nursing staff," and his failure to do so or do anything beyond placing both forms into the preoperative packet constituted a departure from good and accepted medical practice. In contrast, according to Dr. Sherry, "it was not a departure from the standard of care for Dr. Choi to . . . place the [refusal form] in the preoperative package which traveled with the plaintiff throughout her operative course rather than informing Dr. Bryk of plaintiff's refusal personally." There is, therefore, a triable issue of fact as to whether, if Dr. Choi placed both forms into the preoperative packet without alerting anyone associated with the surgery to the inconsistent provisions, he departed from good and accepted medical practice. And, under these circumstances, if Dr. Choi

did depart from good and accepted medical practice, we cannot say as a matter of law that his conduct did not impute to Kingsbrook actual or constructive knowledge that Dr. Bryk would act without the plaintiff's consent. The determination of these issues will be for a finder of fact.

Moreover, there is an issue of fact as to whether Dr. Choi actually was present when the plaintiff executed the consent form. According to Dr. Bryk, the plaintiff signed the consent form immediately prior to surgery while she was in the preoperative holding area and not in the presence of Dr. Choi. Although that account contradicts the deposition testimony of both Dr. Choi and the plaintiff, if it is true, then Dr. Choi could not have known that the plaintiff had executed two documents with conflicting directions as to transfusions, and the hospital would not be liable.

We conclude, therefore, that there are triable issues of fact as to whether Kingsbrook knew or should have known that Dr. Bryk would act without the plaintiff's consent by ordering a transfusion (*see Fiorentino v Wenger*, 19 NY2d at 415). Accordingly, we find that the Supreme Court erred in awarding summary judgment to the plaintiff against Kingsbrook.

We respectfully disagree with our dissenting colleague's view that Kingsbrook is entitled to summary judgment dismissing the malpractice claim because, in receiving a blood transfusion without her consent, the plaintiff was the victim, not of medical malpractice, but of a battery. The issue of what tort, if any, may have been committed by Dr. Bryk in ordering the transfusion is not before us, as summary judgment dismissing the complaint as against him was granted and the plaintiff has not appealed. We conclude only that there are triable issues of fact as to whether Kingsbrook is liable to the plaintiff by reason of a departure from good and accepted medical practice committed by its employee, Dr. Choi. Whatever the appropriate theory of liability may have been against Dr. Bryk, if Kingsbrook is liable to the plaintiff, it is for medical malpractice.

■ Finally, we respectfully disagree with our dissenting colleague's conclusion that emotional distress damages are not compensable in this situation absent any indication that the actions of Kingsbrook endangered the plaintiff's physical safety or caused her to fear for her physical safety. "All there need be to recover for emotional injury here is breach of a duty owing from [Kingsbrook] to plaintiff that results directly in emotional harm, and evidence sufficient to guarantee the genuineness of the

claim" (*Garcia v Lawrence Hosp.*, 5 AD3d 227, 228 [2004] [internal quotation marks and citations omitted]; *see Ornstein v New York City Health & Hosps. Corp.*, 10 NY3d 1, 6 [2008]; *cf. Plunkett v NYU Downtown Hosp.*, 21 AD3d 1022 [2005]). Significantly, Dr. Choi himself testified that, before any transfusion was given, the plaintiff cited her religion in connection with her refusal to consent to transfusions. In our view, inasmuch as the plaintiff has alleged from the outset that receiving a transfusion would violate her religious beliefs as a Jehovah's Witness, the record contains a sufficient guarantee that her claim of having suffered emotional distress as a result of the transfusion is genuine (*see Ornstein v New York City Health & Hosps. Corp.*, 10 NY3d at 6; *Garcia v Lawrence Hosp.*, 5 AD3d at 228).

In sum, because we find that there are triable issues of fact as to whether, through the actions and inaction of Dr. Choi, Kingsbrook knew or should have known that Dr. Bryk would act without the plaintiff's consent, we modify the order under review by deleting the provision thereof granting the plaintiff's motion for summary judgment against Kingsbrook on the issue of liability, and substitute therefor a provision denying the motion. As so modified, we affirm the order insofar as appealed from.

Kingsbrook's remaining contentions are without merit.

CARNI, J., concurs in part and dissents in part and votes to reverse the order insofar as appealed from, deny the plaintiff's motion for summary judgment against the defendant Kingsbrook Jewish Medical Center on the issue of liability, and grant the cross motion of the defendant Kingsbrook Jewish Medical Center for summary judgment dismissing the complaint insofar as asserted against it, with the following opinion:

On December 5, 2003, the plaintiff underwent total knee replacement surgery at defendant Kingsbrook Jewish Medical Center (hereinafter Kingsbrook). The surgery was performed by the plaintiff's private physician, Dr. Eli Bryk. Pursuant to Dr. Bryk's standing orders at Kingsbrook and at his direction during the surgery, the plaintiff received a postoperative autotransfusion of her own blood.[1]

However, upon admission to Kingsbrook on the date of surgery, the plaintiff had signed a form entitled "Refusal to

---

1. An autotransfusion involves the collection of the patient's own blood lost during the course of the surgery, which is then returned back to the

Consent to Blood/Blood Component Transfusion." The ministerial act of obtaining the plaintiff's signature on this form was performed by a Kingsbrook employee, Dr. Gene Choi, who at the time of this surgery was a first-year resident in orthopedic surgery. According to the plaintiff, at this time, she also signed a "Request and Authorization for Operation and/or Procedure" form authorizing Dr. Bryk to perform the knee replacement surgery. Dr. Choi witnessed the plaintiff's signature on this form and the document expressly so indicates. The surgical authorization form, presented to the plaintiff and certified by Dr. Bryk as the plaintiff's private attending surgeon, contained a provision indicating that the plaintiff consented to the administration of blood transfusions. The plaintiff contends that she was unaware that the surgical authorization form contained this provision.

The plaintiff is a Jehovah's Witness, a religion which, according to the plaintiff, prohibits such transfusions.

## I.

The plaintiff commenced this action against Kingsbrook, inter alia, advancing causes of action sounding in negligence, medical malpractice, and failure to "abide by the informed consent forms signed by the plaintiff."[2] Following the completion of discovery, the plaintiff moved for summary judgment against Kingsbrook on the issue of liability, alleging that the giving of blood to the plaintiff was a departure from the applicable standards of medical care. The plaintiff's moving papers characterized the action against Kingsbrook as one seeking to recover damages for "personal injuries sustained by the plaintiff due to the negligence and medical malpractice of the defendants."

Kingsbrook cross-moved for summary judgment dismissing the complaint insofar as asserted against it. Kingsbrook contended that the complaint did not seek to recover damages for medical malpractice, but instead, for lack of informed consent. Kingsbrook made a prima facie showing of entitlement to judgment as a matter of law by demonstrating that, in this case, it was not a departure from accepted medical practice to return the plaintiff's own blood, lost during this surgery, to her body.

patient's circulatory system through, in this case, an existing intravenous (IV) port.

**2.** As distinguished from a failure to provide the plaintiff with the information necessary to make her consent "informed."

Further, Kingsbrook demonstrated that in cases like the instant action, which occur in the hospital setting, the courts generally have refused to impose liability for lack of informed consent upon surgical assistants or physicians who neither ordered nor performed the subject procedure (*see Tibodeau v Keeley*, 208 AD2d 610 [1994]). Kingsbrook correctly contended that it has long been the rule that only "the person providing the professional treatment or diagnosis," in this case Dr. Bryk, may be liable for a failure to make proper disclosure and obtain the patient's informed consent (*see* Public Health Law § 2805-d [1]; *Brandon v Karp*, 112 AD2d 490, 492-493 [1985]). There is no dispute that Dr. Choi did not order or perform any procedure and did not provide the plaintiff with any professional treatment or diagnosis.

There is also no dispute that Kingsbrook's resident surgeon, Dr. Choi, acted in accordance with Kingsbrook's existing surgical admission protocol in witnessing the plaintiff's signature on the transfusion refusal form.

In light of the foregoing, I cannot reconcile how the majority concludes that Dr. Choi "obtain[ed the plaintiff's] informed consent" while simultaneously conceding that (1) it was Dr. Bryk's duty, not Kingsbrook's, to do so, and (2) the witnessing of a consent by a hospital employee does not subject the hospital to liability. Since Public Health Law § 2805-d (1) imposes the duty to obtain a patient's informed consent exclusively on "the person providing the professional treatment or diagnosis," the proposition that Dr. Choi, who did not provide any professional treatment or diagnosis to the plaintiff, "obtain[ed the plaintiff's] informed consent" is, in my view, legally unsustainable.

Dr. Choi, also in accordance with the undisputed hospital protocol, placed the refusal form in the preoperative package which accompanied the plaintiff to the preoperative room where the plaintiff met her private physician, Dr. Bryk.

Kingsbrook, through its expert's opinions, established that it was Dr. Bryk's duty to review the entire preoperative package and to obtain the plaintiff's consent to the surgical procedure. Neither the plaintiff nor Dr. Bryk disputed Kingsbrook's expert opinions on these points. Dr. Bryk signed the form, which also acknowledged his patient's consent to blood transfusions. Critically, neither the plaintiff nor Dr. Bryk dispute that it was Dr. Bryk's duty as the attending surgeon to obtain the plaintiff's consent to all procedures performed pursuant to his orders (*see*

*Sita v Long Is. Jewish-Hillside Med. Ctr.*, 22 AD3d 743 [2005]; *Tibodeau v Keeley*, 208 AD2d 610 [1994]).[3]

Accordingly, there is no factual basis to support the conclusory assertion that Dr. Choi or any other hospital employee knew or should have known that Dr. Bryk would breach his undisputed duty of care by failing to read the entire preoperative package and proceed, in his capacity as the plaintiff's private physician, to obtain the plaintiff's consent to blood transfusions within the surgical consent form he presented to the plaintiff, signed, and certified. Under these circumstances, there is no factual basis to conclude that Kingsbrook knew or should have known that Dr. Bryk was acting without the plaintiff's consent or that it had reason to suspect malpractice (*see Cirella v Central Gen. Hosp.*, 217 AD2d 680 [1995]).[4]

Further, the fact that Dr. Choi, an employee of Kingsbrook, undertook the ministerial task of witnessing and recording the plaintiff's surgical consent and refusal to consent to transfusions neither relieved the plaintiff's private physician, Dr. Bryk, from his obligations to obtain the plaintiff's consent to the transfusion nor placed that obligation on Kingsbrook (*see Cirella v Central Gen. Hosp.*, 217 AD2d at 681).

Dr. Bryk's self-serving and conclusory testimony that Dr. Choi departed from the standard of care in failing to tell him of the plaintiff's refusal is without foundation and does not usurp Dr. Bryk's undisputed duty to read the entire preoperative package and obtain the plaintiff's consent to the procedure he ordered. Dr. Bryk's testimony on this point is speculative and unsup-

---

**3.** The surgical authorization and consent form signed by Dr. Bryk as the plaintiff's private attending physician states:

"I hereby certify that the nature, purpose, benefits, risks of, and alternatives to the proposed procedure/operation and an opportunity to answer questions was offered and all such questions asked were fully answered. I believe that the patient/relative/ guardian fully understands what has been explained and answered, and has consented to undergo the proposed procedure/ operation."

**4.** The plaintiff has offered no evidence to demonstrate that anyone at Kingsbrook knew or was in a position to know that Dr. Bryk's orders were so clearly contraindicated by normal practice that ordinary prudence would require inquiry into the correctness of the orders (*see Toth v Community Hosp. at Glen Cove*, 22 NY2d 255, 265 n 3 [1968]). Since the plaintiff did not submit an expert affidavit of her own, the record is devoid of any evidence that the autotransfusion was in any way contraindicated and thus no issues of fact are raised as to whether Kingsbrook's employees were negligent in not challenging Dr. Bryk's order to perform the transfusion (*see Bailey v Owens*, 17 AD3d 222 [2005]).

ported by any evidentiary foundation. As such, the opinion should be given no probative force and is insufficient to withstand summary judgment (*see Diaz v New York Downtown Hosp.*, 99 NY2d 542, 544-545 [2002] [plaintiff's expert failed to provide any factual basis for her conclusion that certain guidelines established or were reflective of a generally accepted standard or practice in hospital settings]). Here, it is not disputed that Dr. Bryk did not identify any generally accepted hospital protocol or standard which required the individual performing the ministerial act of witnessing the transfusion refusal form to do anything but place it in the preoperative package. Dr. Bryk simply did not dispute the opinion of Kingsbrook's expert that it was Dr. Bryk's duty to review the entire preoperative package prior to the surgery.[5]

Moreover, Dr. Bryk's testimony is contrary to well-settled decisional law, which the majority acknowledges, framing and defining the duty of the attending physician, not the hospital, to obtain a patient's consent to medical treatment (*see Sita v Long Is. Jewish-Hillside Med. Ctr.*, 22 AD3d 743 [2005]; *Cirella v Central Gen. Hosp.*, 217 AD2d at 680-681; *Tibodeau v Keeley*, 208 AD2d 610 [1994]).

The majority's reliance upon the affirmation of Dr. Liebman is, in my view, similarly unavailing.[6] Initially, Dr. Liebman's opinion is factually flawed in that it assumes or summarily concludes that Dr. Choi "obtain[ed] an informed consent" from the plaintiff. This conclusion is without basis in law or fact as Dr. Choi had no duty to obtain the plaintiff's informed consent and signed the surgical consent form only as a witness. Dr. Liebman's statement that Dr. Bryk was "never made aware" of the plaintiff's refusal to receive any blood transfusions also serves to highlight the fundamental flaw in his analysis. Dr. Liebman's attempt to impose on a third party the duty to make Dr. Bryk "aware" of the plaintiff's refusal is simply another

**5.** Indeed, Dr. Bryk admitted that he did not comply with this standard of care. Reduced to its essence, Dr. Bryk's testimony advances the untenable proposition that Dr. Choi should have anticipated that Dr. Bryk would breach his duty of care by failing to read the complete preoperative package before the surgery and further fail to discuss the possibility of blood transfusion with the plaintiff contemporaneous with the performance of the surgery.

**6.** It is important to note that neither the appellant nor, more importantly, the plaintiff, made any mention whatsoever of the Liebman affirmation in the appellate briefs and it was not raised at oral argument or contained in the appendix. Furthermore, the plaintiff did not rely upon or incorporate the Liebman affirmation and did not submit an expert opinion in opposition to Kingsbrook's motion.

way of stating that Dr. Bryk failed to carry out his duty to inform his patient, the plaintiff, of all of the procedures and treatments he planned to perform and to obtain his patient's consent thereto.

Dr. Liebman does not dispute that it was Dr. Bryk's duty to obtain the plaintiff's consent to the transfusion. Nor does Dr. Liebman dispute that it was Dr. Bryk's duty to read the plaintiff's entire preoperative package before performing the surgery, which Dr. Bryk admitted he did not do.

The majority opinion stands upon the proposition that Kingsbrook knew or should have known that Dr. Bryk was acting or would act without the plaintiff's informed consent. Accordingly, the focus under this analysis is not what Dr. Liebman thinks Dr. Choi should have done. Rather, accepting the majority's test as applicable, the proper focus is to look at what Dr. Choi knew or reasonably should have known in advance of Dr. Bryk's undisputed departure from the standard of care as the plaintiff's private physician.

First, Dr. Choi knew that it was Dr. Bryk's undisputed duty to read the entire preoperative package before performing the surgery. The record does not so much as suggest that Dr. Choi had any prior knowledge or reason to know that Dr. Bryk, as established by his own subsequent admission, would breach his undisputed duty of care and only read part of the preoperative package.

Second, Dr. Choi also knew that he had witnessed the plaintiff's signature on the transfusion refusal form and placed it in the preoperative package, where according to undisputed hospital protocol and expert testimony it properly belonged. There is no dispute that the entire package made its way to Dr. Bryk prior to the surgery.[7]

Third, Dr. Choi knew he was not performing the surgery, that the plaintiff was Dr. Bryk's patient, and that it was Dr. Bryk's duty to obtain the plaintiff's consent to a blood transfusion. Clearly, Dr. Choi did not know that Dr. Bryk would not discuss the transfusion issue with the plaintiff in the preoperative room.

Given the foregoing, the majority fails to identify how Dr. Choi knew or should have known that Dr. Bryk either would (1)

---

**7.** Thus, I submit that Dr. Choi did "properly communicate" the plaintiff's refusal by following the undisputed hospital protocol and placing the refusal form in the preoperative package. It is undisputed that the necessary information was in fact delivered to Dr. Bryk—but he chose not to read it.

fail to discuss the administration of a blood transfusion with the plaintiff contemporaneously with the surgery or (2) not read the preoperative package.

Rather than analyzing the evidence and allegations in the temporal sense, which it identifies as the applicable point in time, i.e., what Dr. Choi knew or should have known prior to the surgery, the majority relies upon conclusory opinions which make no attempt to explain how Dr. Choi knew or should have known that Dr. Bryk's conduct would fall below the undisputed standard of care. For example, if the record contained evidence that Dr. Bryk had a habit or practice of failing to read the preoperative package prior to surgery, I would have no difficulty in concluding that there was a triable issue of fact as to what Dr. Choi knew or should have known on behalf of Kingsbrook.

Here, there is no such evidence—a fact which compels the conclusion that Dr. Choi did not know nor should have known that Dr. Bryk would "act without the plaintiff's consent." In order to satisfy the majority's test, there would have to be evidence that Dr. Choi knew that Dr. Bryk would act without the plaintiff's informed consent. The conclusory assertion that Dr. Choi breached some standard of care to an unidentified party in not telling Dr. Bryk about the refusal form does not satisfy the majority's test for Kingsbrook to be liable.[8] The allegation that Dr. Choi fell below the standard of care in not telling Dr. Bryk about the refusal does not, as the majority concludes, equate to knowledge that Dr. Bryk would "act without the plaintiff's consent." Simply saying that Dr. Choi "should have told" Dr. Bryk does not equate with the conclusion that Dr. Choi knew or should have known that Dr. Bryk would fail to read the entire preoperative package or fail to discuss a blood transfusion with the plaintiff on the day of the surgery.

The majority also concludes that Kingsbrook "would not be liable" if the plaintiff signed the surgical consent form immediately prior to surgery in accordance with Dr. Bryk's testimony because Dr. Choi could not have known that the plaintiff executed two documents with conflicting directions as to transfusions. Simultaneously, the majority also concludes that the Liebman affirmation raises a triable issue of fact as to Kingsbrook's liability based upon Dr. Choi's alleged departure

---

**8.** Although Dr. Bryk and Dr. Liebman allege that Dr. Choi had a duty to make Dr. Bryk "aware" of the transfusion refusal, they do not indicate to whom this duty was owed. In other words, they avoid the issue—as does the majority—of whether Dr. Choi owed this duty to the plaintiff or to Dr. Bryk.

from good and accepted medical practice. However, the Liebman affirmation is based exclusively upon the factual premise that the plaintiff signed the surgical consent in Dr. Bryk's presence—not Dr. Choi's presence—just prior to the surgery. Thus, the Liebman affirmation relies upon a factual scenario which, according to the majority, would compel the determination that "[Kingsbrook] would not be liable." Dr. Liebman's affirmation simply cannot raise a triable issue of fact as to Kingsbrook's liability while relying upon a factual scenario that the majority holds would compel a finding that "[Kingsbrook] would not be liable."

## II.

Importantly, the plaintiff concedes that her claim does not allege a failure by Kingsbrook to properly inform her that her knee replacement surgery might entail having to undergo a blood transfusion. The plaintiff also concedes that she does not claim that the transfusion she received was negligently performed or not medically indicated.

Therefore, it is clear, under both the law and the undisputed facts, that the plaintiff's claim is not one for medical malpractice or for lack of informed consent at all. Under the facts of this case, the plaintiff is unable to raise a triable issue of fact on these causes of action. Rather, the plaintiff's claim is one for a civil battery—a claim for which, under the facts and circumstances of this case, I submit Kingsbrook may not be held liable as a matter of law (*see Cerilli v Kezis*, 306 AD2d 430 [2003]; *Messina v Alan Matarasso, M.D., F.A.C.S., P.C.*, 284 AD2d 32, 35 [2001]).

It is well settled that the nature of the action or the remedy available does not depend upon any standardized nomenclature, and the court should look to the character of the allegations, not the form, to determine its true nature (*see Pink v Title Guar. & Trust Co.*, 274 NY 167, 173 [1937]). Divested of the terminology which the plaintiff has chosen to characterize her causes of action, and by which we are not bound, the essence of the plaintiff's claim is that the return of her own blood to her body offended or violated the tenets of her personal religious beliefs. Simply because the plaintiff calls the action one for negligence or medical malpractice does not make it so (*see Pink v Title Guar. & Trust Co.*, 274 NY at 173).

Critical to the analysis at hand, the plaintiff does not claim that Kingsbrook failed to inform her of the risks associated with

the use of autotransfusion. Instead, her claim is that the blood transfusion was performed upon her with no consent at all. This is clearly an allegation of intentional conduct rather than conduct that can be construed as a deviation from the reasonable care standard (*see Cerilli v Kezis*, 16 AD3d 363 [2005]; *Messina v Alan Matarasso, M.D., F.A.C.S., P.C.*, 284 AD2d 32 [2001] [plaintiff alleged defendant performed unauthorized procedure on her breasts during cosmetic facial surgery]; Restatement [Second] of Torts § 18, Comment *d*, Illustration 1).[9]

Notwithstanding the foregoing, the plaintiff has attempted to embrace her claim within medical malpractice theories. Here, the plaintiff characterizes this action as "a medical malpractice action to recover damages for negligent infliction of emotional distress." However, contrary to the true nature of the factual allegations in the plaintiff's complaint, medical malpractice is the gist of the wrong when an operation or procedure is performed without the informed consent of the patient to the risks involved. Battery is the cause of action when the patient has not consented at all to the operation or procedure (*see Cerilli v Kezis*, 16 AD3d 363 [2005] [plaintiff's allegations that the defendant doctor performed a biopsy over the express objections of the injured plaintiff state a cause of action sounding in battery]; *Wiesenthal v Weinberg*, 17 AD3d 270 [2005] [physician's implant of silicone gel prosthesis against the plaintiff's express wishes correctly deemed a cause of action for battery]).[10]

There is no distinction between a situation where there is no consent to treatment whatsoever and those situations where, as here, there is consent to treatment but the treatment goes beyond the scope of the consent. In both situations, the essence of the claim is lack of consent, not lack of informed consent. The absence of consent is inconsistent with consent that is not sufficiently informed, and precludes a claim of lack of informed consent (*see Cross v Colen*, 6 AD3d 306, 307 [2004]). On the other hand, and contrary to the undisputed facts here, where medical treatment is rendered with the actual consent of the patient, any lack of informed consent is medical malpractice

**9.** Accordingly, to the extent that Dr. Bryk testified and Dr. Liebman affirmed that Kingsbrook's resident departed from the standard of care in failing to make Dr. Bryk aware that the plaintiff had signed a blood transfusion refusal form, such testimony is irrelevant to the true nature of the plaintiff's causes of action.

**10.** Although the majority opinion recognizes that the true nature of the plaintiff's claim is based on "lack of consent," it continues to use a medical malpractice analysis which, in my view, is inapplicable.

and not the intentional tort of assault and battery (see *Roma-towski v Hitzig*, 227 AD2d 870, 872 [1996]).

Therefore, in my view, the cases relied upon by the majority, none of which involve the absence of consent, and all of which involve causes of action for medical malpractice or lack of informed consent (see *Hill v St. Clare's Hosp.*, 67 NY2d 72 [1986]; *Fiorentino v Wenger*, 19 NY2d 407 [1967]; *Sita v Long Is. Jewish-Hillside Med. Ctr.*, 22 AD3d 743 [2005]; *Cirella v Central Gen. Hosp.*, 217 AD2d 680 [1995]), have no application to the factual allegations forming the basis of this action, notwithstanding the misnomers utilized by the plaintiff in characterizing her claims.

Contrary to the majority view, I do not believe that the plaintiff's allegations embrace any viable medical malpractice cause of action. I find the facts and allegations in this case involve a simple battery performed by Dr. Bryk acting as the plaintiff's private physician.[11]

Therefore, in my view, the question becomes whether Kingsbrook may be held vicariously liable for this intentional tort.

A hospital is protected from tort liability when, as Kingsbrook did here, its professional staff follows the orders of private physicians selected by the patient (see *Toth v Community Hosp. at Glen Cove*, 22 NY2d 255 [1968]; *Nagengast v Samaritan Hosp.*, 211 AD2d 878, 880 [1995]; *Pollicina v Misericordia Hosp. Med. Ctr.*, 158 AD2d 194 [1990]). The vicarious liability of a hospital for the acts of its employees is governed by the same principles of law as apply to all other employers (see *Bing v Thunig*, 2 NY2d 656, 667 [1957]).

The plaintiff's private physician, Dr. Bryk, was not Kingsbrook's employee and there is no allegation that it maintained a degree of control over him or held him out as its employee such as to support a finding of vicarious liability (see *Mduba v Benedictine Hosp.*, 52 AD2d 450 [1976]).

There is also no dispute that Dr. Bryk was acting as an independent physician who had been specifically retained by the plaintiff and was not employed by Kingsbrook in any capacity. There is also no dispute that the autotransfusion was performed

---

**11.** It is clear from the moving papers and the appellate briefs that the parties, because they have not accepted that this case does not involve a "lack of informed consent" at all but instead, the absence of consent, are struggling with the difficulty in making medical malpractice and lack of informed consent doctrines, duties, and defenses harmonize with the factual allegations of this case.

pursuant to his standing order and at his express direction during the surgery. There is no evidence that Dr. Choi knew or should have known that Dr. Bryk would fail to read the preoperative package or obtain the plaintiff's consent to surgery which, pursuant to his order, provided for blood transfusions. Thus, there is no basis for holding Kingsbrook vicariously liable for the actions of a private physician attending his private patient.

## III.

Notwithstanding that it may not be held vicariously liable for the intentional tort of battery committed by the plaintiff's private physician, and even assuming arguendo that the plaintiff's claim sounds in medical malpractice, Kingsbrook is also entitled to summary judgment because the plaintiff seeks recovery for emotional distress that is not compensable as a matter of law under the undisputed facts of this case.

Although the law in this area has evolved over time, it is well settled that a cause of action for negligent infliction of emotional distress must generally be premised upon "a breach of a duty owed directly to the plaintiff which either unreasonably endangers a plaintiff's physical safety or causes the plaintiff to fear for his or her own safety" (*Daluise v Sottile*, 40 AD3d 801, 803 [2007] [internal quotation marks and citations omitted] [plaintiff's complaint dismissed as it made no allegation that the defendant's conduct unreasonably endangered her safety or caused her to fear for her own safety]; *see E.B. v Liberation Publs.*, 7 AD3d 566 [2004]). I agree with the majority that the genuineness of the emotional injuries claimed has always been and continues to be the touchstone of the law permitting recovery in damages for such injuries (*see Ornstein v New York City Health & Hosps. Corp.*, 10 NY3d 1 [2008] [emotional distress damages recoverable when the claim possesses some guarantee of genuineness]; *Ferrara v Galluchio*, 5 NY2d 16, 21 [1958]). As outlined by the Court of Appeals 50 years ago:

> "Mental disturbance is easily simulated, and courts which are plagued with fraudulent personal injury claims may well be unwilling to open the door to an even more dubious field. But the difficulty is not insuperable. Not only fright and shock, but other kinds of mental injury are marked by definite physical symptoms, which are

capable of clear medical proof. It is entirely possible to allow recovery only upon satisfactory evidence and deny it when there is nothing to corroborate the claim, or to look for some guarantee of genuineness in the circumstances of the case" (*Ferrara v Galluchio*, 5 NY2d at 21).

In this case, the plaintiff's claim to recover damages for emotional distress flowing from the receipt of a medically indicated and properly performed autotransfusion has no merit in the complete absence of any allegation that any act by Kingsbrook endangered her physical safety or caused her to fear for her own safety (*see Daluise v Sottile*, 40 AD3d at 804). This allegedly offensive contact with her body by her own blood admittedly caused the plaintiff no physical injury. Instead, the plaintiff's bill of particulars identifies the personal injuries she sustained as "anger, anxiety, depression, and religious conflict."

Dispositive of the plaintiff's claim is the absence of any allegation that the transfusion endangered her physical safety or caused her to fear for her own safety (*id.*). The plaintiff does not so much as allege, yet establish, a single allegation or fact beyond the plaintiff's conclusions which would cloak her emotional distress claim with some indicia of its reliability.

The majority opinion is contrary to the decisional law in this department and concludes that the plaintiff's allegation of emotional distress, without any evidence beyond the four corners of such allegation, has a sufficient guarantee of genuineness.

*Garcia v Lawrence Hosp.* (5 AD3d 227 [2004]), relied upon by the majority, is a decision of the Appellate Division, First Department, which involved the emotional distress claimed by a mother as a result of her day-old infant having been smothered to death by the medically sedated and unsupervised mother after hospital staff left them alone together. The presence of a "zone of danger" element and the tragic death of the plaintiff's infant in *Garcia* are factors which sharply distinguish it from the case at bar and which make *Garcia* of no persuasive or precedential value here.

*Plunkett v NYU Downtown Hosp.* (21 AD3d 1022 [2005]) provides no support for the majority's finding of genuineness in that it involved the award of emotional distress damages in the already well-established category of cases involving improper handling of a corpse.

Lastly, *Ornstein v New York City Health & Hosps. Corp.* (10 NY3d 1 [2008]), also relied upon by the majority, involved a plaintiff exposed to HIV who established, through a scientifically accepted method of transmission of the virus, that she was actually exposed—thereby demonstrating fear for her safety and fulfilling the indicia of genuineness requirement.

Here, all of the evidence of the plaintiff's emotional distress is exclusively contained within her own thoughts and beliefs. There is no injury to a third party, and no exposure to a scientifically-established risk of illness or other external event which would provide some indicia of reliability.

Reduced to its essence, the plaintiff's evidence on the genuineness of her emotional distress is based solely upon her assertion, in effect, that we must find that she has sufficiently demonstrated her claim sounding in emotional distress because she says she has experienced emotional distress. In accordance with our prior decisions, this is simply not enough to sustain a claim for negligent infliction of emotional distress.

In light of the absence of any corroboration of the plaintiff's claim, and the complete absence of some guarantee of genuineness, I cannot agree to establish a new exception to the well-settled rule that a claim for negligent infliction of emotional distress requires conduct by the defendant which unreasonably endangered the plaintiff's safety or caused her to fear for her own safety (*see Daluise v Sottile*, 40 AD3d 801 [2007]; *Ferrara v Galluchio*, 5 NY2d at 21).

Accordingly, in my view, the Supreme Court erred in granting the plaintiff's motion for summary judgment on the issue of liability insofar as asserted against Kingsbrook, and in denying Kingsbrook's cross motion for summary judgment dismissing the complaint insofar as asserted against it.

LIFSON and McCARTHY, JJ., concur with FISHER, J.P.; CARNI, J., concurs in part and dissents in part in a separate opinion.

Ordered that the appeal from the decision is dismissed, as no appeal lies from a decision (*see Schicchi v J.A. Green Constr. Corp.*, 100 AD2d 509 [1984]); and it is further,

Ordered that the order is modified, on the law, by deleting the provision thereof granting the plaintiff's motion for summary judgment against the defendant Kingsbrook Jewish Medical Center on the issue of liability, and substituting therefor a provision denying the motion; as so modified, the order is affirmed insofar as appealed from; and it is further,

Ordered that one bill of costs is awarded to the defendant Kingsbrook Jewish Medical Center.