Mirshah v Obedian (2021 NY Slip Op 06994)





Mirshah v Obedian


2021 NY Slip Op 06994


Decided on December 15, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 15, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
ANGELA G. IANNACCI
WILLIAM G. FORD
DEBORAH A. DOWLING, JJ.


2018-03662
2018-03663
 (Index No. 603647/13)

[*1]Mohammad Mirshah, et al., appellants,
v
Richard S. Obedian, etc., et al., respondents.


Pollack Pollack Isaac & DeCicco, LLP, New York, NY (Brian J. Isaac and Christopher J. Soverow of counsel), for appellants.
Connick, Myers, McNamee & Fitzgerald, PLLC, Mineola, NY (Barbara A. Myers of counsel), for respondents Richard S. Obedian, Richard S. Obedian, MD, PLLC, and Island Spine and Sports Medicine, P.C.
Bower Law, P.C., Uniondale, NY (Anina H. Monte and Gianna Crespo of counsel), for respondent Winthrop University Hospital.



DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, etc., the plaintiffs appeal from (1) an order of the Supreme Court, Nassau County (Anna Anzalone, J.), dated January 25, 2018, and (2) a judgment of the same court dated February 9, 2018. The order, insofar as appealed from, granted the motion of the defendant Winthrop University Hospital, and the separate motion of the defendants Richard S. Obedian, Richard S. Obedian, MD, PLLC, and Island Spine and Sports Medicine, P.C., for summary judgment dismissing the complaint insofar as asserted against each of them. The judgment, upon the order, is in favor of each of the defendants and against the plaintiffs dismissing the complaint.
ORDERED that the appeal from the order is dismissed; and it is further,
ORDERED that the judgment is modified, on the law, by deleting the provisions thereof which are in favor of the defendants Richard S. Obedian, Richard S. Obedian, MD, PLLC, and Island Spine and Sports Medicine, P.C., and against the plaintiff dismissing the complaint insofar as asserted against those defendants; as so modified, the judgment is affirmed, those defendants' motion for summary judgment dismissing the complaint insofar as asserted against them is denied, the order dated January 25, 2018, is modified accordingly, and the complaint is reinstated insofar as asserted against those defendants; and it is further,
ORDERED that one bill of costs is awarded to the plaintiffs, payable by the defendants Richard S. Obedian, Richard S. Obedian, MD, PLLC, and Island Spine and Sports Medicine, P.C., and one bill of costs is awarded to the defendant Winthrop University Hospital, payable by the plaintiffs.
The appeal from so much of the order as granted the separate motions of the [*2]defendant Winthrop University Hospital, and the defendants Richard S. Obedian, Richard S. Obedian, MD, PLLC, and Island Spine and Sports Medicine, P.C., for summary judgment dismissing the complaint insofar as asserted against each of them must be dismissed, because the right of direct appeal therefrom terminated with the entry of judgment in the action (see Matter of Aho, 39 NY2d 241, 248). The issues raised on the appeal from that portion of the order are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501[a][1]).
The plaintiff Mohammad Mirshah (hereinafter Mirshah) was a patient of the defendants Richard S. Obedian, Richard S. Obedian, MD, PLLC, and Island Spine and Sports Medicine, P.C. (hereinafter collectively the practitioner defendants). Mirshah complained of, inter alia, lower back pain stemming from a car accident in 2010. Obedian initially pursued a conservative course of treatment, but ultimately recommended that Mirshah undergo a laminectomy with possible fusion surgery at the L3-L4 and L4-L5 levels of his spine. Mirshah accepted Obedian's recommendation and surgery was scheduled.
On the morning of the surgery, Mirshah presented at the defendant Winthrop University Hospital (hereinafter the Hospital) for the surgery as planned. When Obedian arrived, he informed Mirshah that he had changed his mind about performing the planned laminectomy and instead recommended implantation of "X-STOP" devices in his back. After a brief discussion about the relative benefits of the procedure to implant the X-STOP devices over the planned procedure, Mirshah agreed to undergo the procedure to implant the X-STOP devices. Obedian performed the procedure without incident.
The procedure to implant the X-STOP devices did not achieve the intended result, and after several months of increasing pain and new symptoms, Obedian recommended that Mirshah undergo the originally-planned laminectomy with possible fusion surgery. Mirshah obtained a second opinion from another doctor, John Bendo, who opined that Mirshah's condition did not warrant the surgical intervention he had received. On Bendo's recommendation, Mirshah underwent surgery to remove the X-STOP devices and thereafter pursued a conservative course of treatment.
Mirshah, and his wife suing derivatively, thereafter commenced this action against the practitioner defendants and the Hospital. The plaintiffs asserted, inter alia, that the practitioner defendants negligently recommended, negligently carried out, and negligently provided post-operative care for the procedure to implant the X-STOP devices, which, they alleged, was "contraindicated by the manufacturer and medical literature" (first through third causes of action). They also alleged that the practitioner defendants failed to obtain Mirshah's informed consent before performing the procedure to implant the X-STOP devices (fifth through seventh causes of action). The plaintiffs also sought to hold the Hospital vicariously liable for the practitioner defendants' alleged malpractice (fourth and eighth causes of action). Mirshah's wife asserted derivative causes of action against both the practitioner defendants (ninth through eleventh causes of action) and the Hospital (twelfth cause of action).
The practitioner defendants and the Hospital separately moved for summary judgment dismissing the complaint insofar as asserted against each of them. On January 25, 2018, the Supreme Court issued an order, inter alia, granting both motions, and, on February 9, 2018, entered a judgment in favor of each of the defendants and against the plaintiffs dismissing the complaint. The plaintiffs appeal.
"In a medical malpractice action, a defendant moving for summary judgment bears the initial burden of establishing either that there was no departure from good and accepted medical practice or that any departure was not a proximate cause of the plaintiff's injuries" (Kogan v Bizekis, 180 AD3d 659, 660). "'In order to sustain this prima facie burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's complaint and bill of particulars'" (id. at 660, quoting Sheppard v Brookhaven Mem. Hosp. Ctr., 171 AD3d 1234, 1235). "Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions" (Feinberg v Feit, 23 AD3d 517, 519).
Initially, we note that contrary to the practitioner defendants' contention, aside from the plaintiffs' new claim that the X-STOP device was "unproven" (see Michel v Long Is. Jewish Med. Ctr., 125 AD3d 945, 946-947; see also Barone v Bausch & Lomb, Inc., 191 AD3d 1365, 1367), they did not improperly raise new theories of liability in opposition to the motions for summary judgment (see Rich v Donnenfeld, 191 AD3d 909, 910; Schwartzberg v Huntington Hosp., 163 AD3d 736, 738).
As to the causes of action alleging departure from good and accepted medical practice, the practitioner defendants met their prima facie burden through their submission of the affirmation of their expert, Alok Sharan, an orthopedic surgeon. Based upon his review of Mirshah's medical records and other evidence, Sharan opined, to a reasonable degree of medical certainty, that Obedian conformed to the applicable standard of care in recommending, carrying out, and providing postoperative care for the procedure to implant the X-STOP devices. Specifically, Sharan opined that Mirshah was a suitable candidate for use of the X-STOP device, based, in part, on the facts that he had a diagnosis of spinal stenosis and experienced pain relief when his spine was in flexion.
In opposition, the plaintiffs submitted the affirmation of their expert, Neal Small, an orthopedic surgeon, who opined to a reasonable degree of medical certainty that Mirshah's stenosis was not serious enough to warrant either of the surgical interventions Obedian recommended. Small noted that Obedian failed to obtain an MRI image of the plaintiff's spine in flexion prior to recommending the implantation of the X-STOP devices, and thus could not accurately assess whether Mirshah was a suitable candidate for the implantation of the X-STOP devices. Small also explained that Obedian's delay in diagnosing the cause of Mirshah's post-operative complaints exacerbated Mirshah's injuries.
Since the plaintiffs failed to proffer evidence demonstrating that Obedian's execution of the X-STOP procedure departed from good and accepted medical practice, they failed to raise a triable issue of fact as to whether the procedure itself was competently performed. In contrast, the plaintiffs did succeed in raising a triable issue of fact as to whether the practitioner defendants negligently recommended surgical intervention based on an incomplete or incorrect understanding of Mirshah's condition, negligently determined that implantation of the X-STOP devices was indicated, and negligently delayed in providing the appropriate post-operative care and recommendations.
The plaintiffs alleged in their complaint and bills of particulars that use of the X-STOP devices was contraindicated. Small's opinion that the practitioner defendants should have obtained an image of Mirshah's spine in flexion before recommending the use of the X-STOP devices both reflects the undisputed fact that one of the criteria for the use of the X-STOP device is that the patient experiences pain relief with the spine in flexion, and responds to the practitioner defendants' prima facie showing on that point. In addition, contrary to the practitioner defendants' contention, Small appropriately relied on Bendo's office chart, as this exhibit was submitted by the practitioner defendants and relied upon by their expert (see Akm Shafiqul Azam v New York City Health & Hosps. Corp., 98 AD3d 595, 596). Accordingly, since the plaintiffs succeeded in rebutting the practitioner defendants' prima facie showing, the Supreme Court erred in granting those branches of the practitioner defendants' motion which were for summary judgment dismissing the first through third causes of action (see Kiernan v Arevalo-Valencia, 184 AD3d 727, 729; Sheppard v Bookhaven Mem. Hosp. Med. Ctr., 171 AD3d at 1235; Salgado v North Shore Univ. Hosp., 167 AD3d 1057, 1058).
"'To establish a cause of action for malpractice based on lack of informed consent, plaintiff must prove (1) that the person providing the professional treatment failed to disclose alternatives thereto and failed to inform the patient of reasonably foreseeable risks associated with the treatment, and the alternatives, that a reasonable medical practitioner would have disclosed in the same circumstances, (2) that a reasonably prudent patient in the same position would not have undergone the treatment if he or she had been fully informed, and (3) that the lack of informed consent is a proximate cause of the injury'" (Godel v Benjy Goldstein & George Freud, D.D.S., PLLC, 155 AD3d 939, 941-942, quoting Foote v Rajadhyax, 268 AD2d 745, 745; see Public Health [*3]Law § 2805-d).
Here, the practitioner defendants failed to establish, prima facie, that they obtained Mirshah's informed consent for the procedure to implant the X-STOP devices. While there is no dispute that Obedian and Mirshah discussed the relative benefits of the procedure to implant the X-STOP devices over the originally-planned procedure, the practitioner defendants failed to eliminate all triable issues of fact as to whether Obedian also sufficiently described the risks and possible side effects of the procedure to implant the X-STOP devices (see Kleinman v North Shore Univ. Hosp., 148 AD3d 693, 695). However, this does not end the analysis.
As a defense to a medical malpractice action premised upon lack of informed consent, a practitioner may proffer evidence that "the patient assured the medical . . . practitioner that he [or she] would undergo the treatment, procedure or diagnosis regardless of the risk involved, or the patient assured the medical . . . practitioner that he [or she] did not want to be informed of the matters to which he [or she] would be entitled to be informed" (Public Health Law § 2805-d[4][b]). Here, although Mirshah's deposition testimony made clear that he deferred to Obedian's judgment as to whether he should undergo a procedure and, if so, which procedure, it does not establish that Mirshah either insisted on the procedure to implant the X-STOP devices, rather than other treatment options, regardless of risk, or that he refused any proffered advice. On the contrary, the record establishes that, far from insisting on a contraindicated procedure, Mirshah relied upon Obedian's professional expertise in determining the correct course of treatment. Likewise, although Obedian's testimony establishes that he explained the benefits of performing the procedure to implant the X-STOP devices rather than a laminectomy, he did not testify that he offered, or that Mirshah declined, any proffered explanation of the risks and limitations of the procedure to implant the X-STOP devices. The practitioner defendants therefore failed to meet their prima facie burden of demonstrating that Mirshah either assured Obedian that he "would undergo the . . . procedure . . . regardless of the risk involved" or that he "did not want to be informed of the matters to which he would be entitled to be informed" (Public Health Law § 2805-d[4][b]). Accordingly, the Supreme Court erred in granting those branches of the practitioner defendants' motion which were for summary judgment dismissing the fifth through seventh causes of action.
The causes of action alleging loss of consortium are derivative in nature (see Many v Lossef, 190 AD3d 721, 724; Sokoloff v Schor, 176 AD3d 120, 133; Taggart v Costabile, 131 AD3d 243, 257). In light of our determination that the Supreme Court erred in granting those branches of the practitioner defendants' motion which were for summary judgment dismissing Mirshah's causes of action asserted against them, the court also should have denied those branches of those defendants' motion which were for summary judgment dismissing the ninth, tenth, and eleventh causes of action.
"'In general, under the doctrine of respondeat superior, a hospital may be held vicariously liable for the negligence or malpractice of its employees acting within the scope of employment, but not for negligent treatment provided by an independent physician, as when the physician is retained by the patient himself'" (Valerio v Liberty Behavioral Mgt. Corp., 188 AD3d 948, 949, quoting Seiden v Sonstein, 127 AD3d 1158, 1160; see Hill v St. Clare's Hosp., 67 NY2d 72, 79). This limitation on liability does not apply when the defendant hospital's staff follows orders knowing that they are "'so clearly contraindicated by normal practice that ordinary prudence requires inquiry into the correctness of the orders'" (Dupree v Westchester County Health Care Corp., 164 AD3d 1211, 1213, quoting Doria v Benisch, 130 AD3d 777, 777-778). Thus, in order to establish entitlement to judgment as a matter of law defeating a claim of vicarious liability, a hospital must demonstrate that the physician alleged to have committed the malpractice was an independent contractor rather than a hospital employee and that an exception to the general rule does not apply (see Dupree v Westchester County Health Care Corp., 164 AD3d at 1213).
"With respect to a cause of action predicated on lack of informed consent, 'where a private physician attends his or her patient at the facilities of a hospital, it is the duty of the physician, not the hospital, to obtain the patient's informed consent" (Cynamon v Mount Sinai Hosp., 163 AD3d 923, 925, quoting Salandy v Bryk, 55 AD3d 147, 152). "It is only where the hospital knew [*4]or should have known that the private physician was acting or would act without the patient's informed consent that it may be held liable" (Cynamon v Mount Sinai Hosp., 163 AD3d at 925).
Here, the Hospital met its prima facie burden by establishing that Obedian was not an employee, that its own staff were acting under Obedian's direction and supervision and did not commit any independent acts of negligence, and that Obedian's orders were not clearly contraindicated by normal practice. The Hospital further established, prima facie, that there was no reason for it to know or suspect that Obedian was acting or would act without Mirshah's informed consent (see Cynamon v Mount Sinai Hosp., 163 AD3d at 925). In opposition, the plaintiffs failed to raise a triable issue of fact. In particular, Small's conclusory assertions were insufficient to raise a triable issue of fact as to whether the last minute change in the nature of the surgical procedure in and of itself triggered the Hospital's duty of inquiry or intervention. Accordingly, the Supreme Court properly granted those branches of the Hospital's motion which were for summary judgment dismissing the fourth and eighth causes of action. For the same reasons, the court properly granted that branch of the Hospital's motion which was for summary judgment dismissing the twelfth cause of action, asserting loss of consortium against the Hospital (see Many v Lossef, 190 AD3d at 724; Sokoloff v Schor, 176 AD3d at 133; Taggart v Costabile, 131 AD3d at 257).
RIVERA, J.P., IANNACCI, FORD and DOWLING, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court